the proposed street. The same attorney appeared as to all of the property of each of the present claimants, as well that which was included before as after the change and there was never any segregation of the interests. My view is that the enabling act (section 1000, supra) did not contemplate such a state of facts as is here presented; that there was not "discontinuance" within the meaning of the section; but that there was simply an amendment of the proceeding. The section finds ample scope when applied to a discontinuance either as to a whole piece of property or to the entire proceeding, and it is not necessary to justice in this case that it should be made to apply to an amended proceeding by which a change of lines simply leaves out a part of the owner's property and retains a substantial portion thereof as a part of the new street.

Motions denied.

Argued before JENKS, BURR, THOMAS, STAPLETON, and PUTNAM, JJ.

Philip M. Bromberg, of Brooklyn, N. Y., for appellants.

Edward Riegelmann, of Brooklyn, N. Y. (Howard L. Campion, of New York City, on the brief), for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements, upon the opinion of Mr. Justice Kapper at Special Term.

---

(160 App. Div. 86)

### In re McDONALD'S ESTATE.

(Supreme Court, Appellate Division, First Department. January 9, 1914.)

1. EXECUTORS AND ADMINISTRATORS (§ 27*)—WORDING OF LETTERS.

Special phraseology of letters of administration is unimportant; it being for the surrogate merely to determine whether they shall issue, and the Code fixing the effect of, and authority conferred by, them, once they are issued.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 171–176; Dec. Dig. § 27.*]

2. COURTS (§ 198*)—SURROGATE'S COURT—JURISDICTION.

The Surrogate's Court is one of special and limited jurisdiction, which is wholly statutory.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 469, 471–475, 478; Dec. Dig. § 198.*]

3. EXECUTORS AND ADMINISTRATORS (§ 35*)—REMOVAL.

The surrogate alone can remove an administrator.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 227–262; Dec. Dig. § 35.*].

4. EXECUTORS AND ADMINISTRATORS (§ 35*)—REVOKING LETTERS—GROUNDS.

Letters of administration can be revoked only for a reason specified in Code Civ. Proc. § 2685.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 227–262; Dec. Dig. § 35.*]

5. EXECUTORS AND ADMINISTRATORS (§ 35*)—REVOKING LETTERS—NECESSITY OF FINDINGS.

Before a surrogate can revoke letters of administration, he must find as a fact the existence of one of the causes specified in Code Civ. Proc. § 2685.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 227–262; Dec. Dig. § 35.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. EXECUTORS AND ADMINISTRATORS (§ 35*)—REVOKING LETTERS—EVIDENCE AND· FINDINGS.

A surrogate cannot revoke letters of administration because of misconduct of the administrator, the charges thereof being denied, without taking evidence and making findings of fact thereon.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 227–262; Dec. Dig. § 35.*]

7. EXECUTORS AND ADMINISTRATORS (§ 35*)—COADMINISTRATORS—REVOKING LETTERS OF ONE.

.Where letters of administration are, under authority of Code Civ. Proc. § 2660, granted not only to one entitled to administration, but, with his consent, also to another not entitled to administration, revocation of the letters of the former does not terminate the authority of the latter to act as administrator, nor is it ground for revoking his letters, though a person of age at this time would have been the person entitled to administration had she been of age when the letters were originally granted.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 227–262; Dec. Dig. § 35.*]

8. EXECUTORS AND ADMINISTRATORS (§ 17*) — COADMINISTRATORS — APPOINTMENT.

Under Code Civ. Proc. § 2660, providing that the surrogate may grant letters to one entitled to administration, and with his consent administration may be granted to another not entitled to the same, the letters need not issue at the same time, but the consent of the former and the issuance of the letters to the latter may be after letters are issued to the former.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 43–59; Dec. Dig. § 17.*]

McLaughlin, J., dissenting.

Appeal from Surrogate's Court, New York County.

In the matter of the estate of Alexander McDonald, deceased. From an order revoking its letters of administration, on application of Laura McDonald Stallo and another, the Metropolitan Trust Company of the City of New York appeals. Reversed and remitted for further action.

For opinion below, see 82 Misc. Rep. 135, 143 N. Y. Supp. 775.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John G. Milburn, of New York City, for appellant.

Nash Rockwood, of New York City, for respondents.

SCOTT, J. [1] I do not think·that the appellant's right to act as administrator of the estate of Alexander McDonald, deceased, terminated ipso facto upon the revocation of the letters previously issued to the coadministrator, Edmund K. Stallo. I attach no importance to the phraseology of the letters of administration issued to the trust company. It was for the surrogate to determine whether or not letters should issue. Having decided that they should, their effect, and the authority they conferred, was fixed by the Code of Civil Procedure and·could neither be enlarged nor restricted by the surrogate.

[2] It is well understood that the surrogate's court, while a court of record, is a court of special and limited jurisdiction which is wholly statutory, and that it possesses no inherent jurisdiction beyond that

conferred by statute. To determine the effect of letters issued by it, and its power to revoke letters once issued, reference must be made to the statutes.

[3-6] At the outset it may be useful to point out that the order appealed from can be upheld, if at all, only upon the ground that the right of the trust company to act as administrator terminated when Stallo's letters were revoked. It is true that the motion papers bristle with charges of bad faith and maladministration on the part of the trust company, and that both the learned surrogate and my Brother McLAUGHLIN refer to these charges as in some way affording justification for the revocation of the letters while not, in terms, placing the revocation upon this ground. It is easily demonstrable, however, that we cannot affirm the order on this ground. The surrogate alone can remove an administrator (Hood v. Hood, 2 Dem. Sur. 583, affirmed 98 N. Y. 363), and the reasons for which he can revoke letters of administration are explicitly specified in section 2685, Code Civil Procedure. His authority to remove executors and administrators and to revoke letters for cause is solely derived from the Code (In re Estate of Corn, 9 Civ. Pro. Rep. 243, per Rollins, Sur.), and before he may act he must find as a fact that some of the causes specified in section 2685 exist. Nor may he revoke letters under this section where, as in this case, the charges of misconduct are denied, without taking evidence and making findings of fact. Matter of Dittrich, 120 App. Div. 504, 105 N. Y. Supp. 303; Matter of Monroe, 142 N. Y. 484, 37 N. E. 517; Matter of Scott, 49 App. Div. 130, 62 N. Y. Supp. 1059. In the present case the surrogate took no evidence and has made no findings of fact. His order of revocation therefore cannot be upheld upon the ground that the trust company has been guilty of misconduct such as is specified in the Code as a ground for revocation.

[7, 8] This brings us back to the question, above indicated, whether or not the authority of the trust company to act as administrator terminated ipso facto upon the revocation of the letters issued to its coadministrator. It is perhaps significant that the researches neither of the learned surrogate, nor those of Mr. Justice McLAUGHLIN, nor those of the counsel for the respondent, have been able to find any authority to the effect that the revocation of the letters of the coadministrator necessarily revoked or called for the revocation of those of the trust company. The question, although not directly involved, was touched upon in Steele v. Leopold, 135 App. Div. 247–253, 120 N. Y. Supp. 569, 575, wherein Mr. Justice Laughlin said:

"No objection was taken by answer to the right of the plaintiff to continue the action, based on the ground that his appointment as administrator with the will annexed, although valid when made, fell with the revocation of the letters to Helen Steele Gwynne, nor is that presented on the appeal, and therefore it is not decided. It may be observed, however, that it would seem from the provisions of section 2591 of the Code of Civil Procedure that where the Surrogate's Court obtains jurisdiction, as it clearly did by the petition, to issue letters of administration, and the issuance thereof is authorized, they remain valid until the decree pursuant to which they were issued is reversed, or they are revoked by order of the Surrogate's Court, and that they cannot be questioned collaterally in the absence, of course, of fraud or collusion with regard to the jurisdictional facts."

In Matter of Ireland, 47 Misc. Rep. 545, 95 N. Y. Supp. 1079, where a decree had been made granting administration to a person entitled thereto, and also, upon her petition and consent, to a competent person not entitled, it was held that a joint administration was not necessary, but that, upon the refusal of the person entitled to qualify, letters might notwithstanding be issued to the competent person not entitled but appointed with the consent of the person entitled. This decision is criticised by Mr. Jessup, in his work on Surrogate's Practice (4th Ed.) p. 583; but it is not wholly without support in the language of section 2660, Code Civil Procedure. That section reads, in part, as follows:

"If there are several persons equally entitled to administration, the surrogate may grant letters to one or more of such persons, and administration may be granted to one or more competent persons, although not entitled to the same, with the consent of the person entitled to be joined with such person or persons."

It is to be observed that the statute does not qualify or restrict the authority to be conferred upon the "competent person or persons" not entitled. All it says is that administration may be granted to them, which means administration in its ordinary sense. Nor does it in terms require that such person must act conjointly with the person entitled to administration. All it says is that administration may be granted to such competent persons with consent of the person entitled, not jointly with the person entitled; nor does it, in terms, require that the person entitled must also act as administrator.

Matter of Campbell, 123 App. Div. 212, 108 N. Y. Supp. 281, and 192 N. Y. 312, 85 N. E. 392, 18 L. R. A. (N. S.) 606, really has no bearing upon the question now under consideration. In that case the issue of letters of administration was held to have been unauthorized in the first instance because a person having a prior right had neither renounced nor been cited. The original appointment was therefore found to have been defective. Here there is no serious claim made that the original appointment of the trust company as administrator was unauthorized. It is attacked as having become invalid in consequence of something which has happened since the appointment was made. It would be provocative of great confusion if grants of administration, valid when made, were to be vacated whenever some condition of affairs arose which if in existence when letters were originally issued would have required the issuance to a different person than the one to whom they were legally issued, and who were the persons then entitled to them. There is no statutory requirement that requires a vacation for this reason of letters which were authorized by law when they were issued, and, in view of the wide authority given to the surrogate to remove an administrator for misconduct, it is unnecessary for the protection of persons interested in estates, to read into the statute a rule which has not been written in it. The policy of the law as expressed in the Code is in favor of unbroken continuity of administration, for by section 2692 it is provided that where one of two or more executors or administrators dies or becomes incapable of administering the trust imposed upon him, or when letters are revoked with respect to one of them, a suc-

cessor to the person whose letters are revoked shall not be appointed (except where the will requires it), but the other may proceed and complete the administration of the estate pursuant to the letters.

In my opinion the order of the surrogate now appealed from cannot be sustained, and should be reversed, and the matter remitted to the surrogate for further action in accordance with this opinion.

INGRAHAM, P. J., and LAUGHLIN and CLARKE, JJ., concur.

McLAUGHLIN, J. (dissenting). Alexander McDonald died on the 18th of March, 1910, leaving him surviving as his only next of kin two grandchildren, Laura McDonald Stallo and Helena McDonald Stallo, both of whom were then under 21 years of age. On the 29th of April, 1910, upon the petition of Edmund K. Stallo, the father of the two grandchildren, and their general guardian, letters of administration upon McDonald's estate were issued to him. He qualified and acted as sole administrator of the estate until the 18th of October, following, when, upon his petition, letters of administration were issued to the appellant to administer the estate "in conjunction with Edmund K. Stallo, heretofore appointed administrator." The trust company qualified and acted in conjunction with Stallo until December 23, 1910, when the letters issued to him, either upon his request or without objection upon his part, were revoked, and thereafter it acted as sole administrator until the decree appealed from was made. After Laura McDonald Stallo reached the age of 21 years (her sister Helena then being a minor), she instituted this proceeding to remove the appellant as administrator, alleging, in addition to the facts above stated, others tending to show that the appellant had a personal interest which, if not antagonistic to, was or might become in conflict with, its interest as administrator, and also misconduct on its part in the management of the estate which required that the letters theretofore issued to it should be revoked. The appellant denied the allegations of misconduct, and the surrogate, without taking any evidence or passing upon that question, revoked the letters, and the trust company appeals.

I am unable to agree with the majority of the court that the decree should be reversed and the application of the petitioner denied, for the following reasons:

First. The right to letters of administration is regulated by statute. Code of Civil Procedure, § 2660. This section provides, among other things, that administration, in case of intestacy, must be granted to the relatives of the deceased entitled to succeed to his personal property, who will accept the same, in the order there specified—clearly indicating that those interested in the distribution of the estate are to be preferred, and that, when a person entitled is under 21 years of age, then letters of administration must be granted to his guardian in preference to creditors or other persons. The section also provides that administration may be granted to one or more competent persons "although not entitled to the same, with the consent of the person entitled to be joined with such person or persons, which consent must be in writing and filed in the office of the surrogate." The statute gives pri-

ority to those entitled to letters as a matter of right. The surrogate has no discretion in that respect, but must issue the letters to the one entitled thereto unless the same be withheld for reasons stated in section 2661 of the Code of Civil Procedure. When the intestate died, the respondent herein would have been entitled to letters of administration as a matter of right had she then been 21 years of age. She, however, being under that age, the right which she would otherwise have had passed to her general guardian by virtue of which he obtained letters.

I agree with Mr. Justice SCOTT that "the Surrogate's Court * * * is a court of special and limited jurisdiction which is wholly statutory, and that it possesses no inherent jurisdiction beyond that conferred by statute," and for this reason, independent of others, to be hereafter stated, I am of the opinion that the decree appealed from should be affirmed. When letters were issued to the general guardian, they could also have been issued to the trust company, provided he had so requested and had filed a written consent thereto in the office of the surrogate. Code Civ. Proc. § 2660. He did not make such request, nor did he then file such written consent. The letters were issued to him as sole administrator. He qualified and entered upon the discharge of his duties as such. There is no provision of the statute, so far as I am aware, that confers jurisdiction upon the Surrogate's Court thereafter to appoint a coadministrator. If another administrator were to be appointed, then the Surrogate's Court obtained its jurisdiction to act, not by virtue of section 2660 of the Code of Civil Procedure, but by virtue of section 2693. The jurisdiction conferred by the former section relates to the granting of letters of administration in the first instance, while the latter section confers jurisdiction to grant subsequent letters when all the executors or administrators to whom letters have been issued have died, become incapable of acting, or the letters as to all have been revoked, and the proceeding then to be taken for the appointment of new administrators is the same as that provided in the first instance; in other words, as I read section 2660, the Surrogate's Court exhausts its jurisdiction to appoint an administrator once such jurisdiction has been exercised, and it cannot thereafter recover it so long as the administrator appointed continues to act. When it appointed Stallo, he qualified, and, so long as he continued to act, another administrator could not be appointed, either to act jointly with him or otherwise. He was acting at the time the trust company was appointed. The Surrogate's Court, therefore, did not have jurisdiction to appoint the trust company coadministrator at the time such appointment was made. The appointment, if not void, was certainly voidable at the instance of any person interested in the estate and could have been revoked upon a proper proceeding being instituted for that purpose. When the respondent became of age, she instituted such proceeding, and the Surrogate's Court properly, at her instance, revoked the letters. Matter of Campbell, 192 N. Y. 312, 85 N. E. 392, 18 L. R. A. (N. S.) 606.

Second. But assuming that the Surrogate's Court had jurisdiction and that letters of administration were regularly issued to the trust company, the right on its part to act in pursuance of the same was,

as it seems to me, terminated when the letters issued to the general guardian were revoked. The letters issued to the trust company authorized it only to act "in conjunction with Edmund K. Stallo." No authority has ever been conferred upon it to act as sole administrator. One interested in the estate of a decedent may petition the Surrogate's Court for a revocation of letters of administration theretofore granted "where the  *  *  *  administrator was, when letters were issued to him, or has since become, incompetent or disqualified by the law to act as such." Code Civ. Proc. § 2685, subd. 1. The revocation of the letters issued to the general guardian prevented it from further acting. It was then "incompetent or disqualified by law to act as such." Its right to be associated as coadministrator came through the general guardian. Independent of that, it could not have obtained letters. Nor do I think the general guardian could ask that it be associated with him, and then, as soon as letters were issued, have his letters revoked and thus indirectly confer upon the trust company the right to administer the estate which it could not have obtained directly. The construction sought to be put upon the language of section 2660 of the Code of Civil Procedure in Matter of Ireland, 47 Misc. Rep. 545, 95 N. Y. Supp. 1079, is strained and I think unwarranted. I cannot believe that the Legislature intended to change a statute which had been upon the statute books of the state for upwards of 50 years, by the mere use of a comma. I entirely concur in the criticism placed upon this decision by Mr. Jessup in his work on Surrogate's Practice (4th Ed.) p. 583.

Third. I am of the opinion the decree should be affirmed because the trust company is in a position where its personal interest is, or may become, in conflict with its interest as administrator. The fact is not disputed that at the time of the death of the intestate the trust company held his note for $2,700,000, and stocks and bonds of the par value of a very large amount as collateral to secure its payment. After the letters issued to Stallo were revoked, and while the appellant was acting as sole administrator, it, not as administrator, but in its personal interest, sold the collateral. The petitioner alleges that the sale was made at a time and in a manner which resulted in a loss to the estate of upwards of $2,500,000; that it was also made in direct violation of an agreement with the trust company, or its president, that the stocks and bonds would not be sold at the time when they were. The allegations in the petition as to the agreement not to sell the collateral, as well as the loss alleged to have been sustained, are denied by the appellant, and the surrogate took no evidence and made no findings upon the issue thus raised. This, however, seems to me of no importance because the determination of the appeal does not depend in any way upon the merits of the claim thus made. The admitted facts require, in the proper administration of justice, that the letters issued to the appellant should be revoked. The appellant admits or does not deny, that at the time of the death of McDonald it held the note and collateral; that a portion of the collateral was sold by it, and the amount realized from the sale was at least $1,000,000 less than would have been realized had the same been sold at a subsequent date. Whether

the amount of the loss thus sustained by the estate were due to the act of the trust company and for which it can be held liable can only be determined after the issues bearing upon that subject have been tried. When that time arrives, the subject will become a real issue in which the personal interest of the trust company will come directly in conflict with its interest as administrator. This fact, having been made to appear, was sufficient, in and of itself, to justify the Surrogate's Court in granting the decree and revoking the letters of administration, to the end that another administrator might be appointed. Matter of West, 40 Hun, 291, affirmed 111 N. Y. 687, 19 N. E. 286; Pyle v. Lyle, 137 App. Div. 568, 122 N. Y. Supp. 256, affirmed 199 N. Y. 538, 92 N. E. 1099; Munson v. S. G. & C. R. R. Co., 103 N. Y. 58, 8 N. E. 355; Oliver v. Frisbie, 3 Dem. Sur. 22; Matter of Wallace, 68 App. Div. 649, 74 N. Y. Supp. 33.

Fourth. It is said that the decree must be reversed because no findings were made. If the subjects heretofore discussed in this opinion are sound, then findings were unnecessary because the existence of the fact for which the letters were revoked were either admitted or not denied and as to such facts the surrogate did not have to make findings. It is no more necessary in the Surrogate's Court to make findings unless an issue is raised than it is in the Supreme Court. Matter of Sprathoff, 50 Misc. Rep. 109, 98 N. Y. Supp. 921, affirmed 112 App. Div. 918, 98 N. Y. Supp. 1114; Matter of Marx, 106 App. Div. 212, 94 N. Y. Supp. 151. An administrator may be removed without taking any evidence when the facts set out in the petition are admitted or not denied in the answer.

In conclusion, the petition asking for the removal of the appellant contains several allegations of misconduct which, if true, would not only justify but require its removal as administrator. They are denied in the answer, but if established by evidence, no one, I take it, would contend for a moment that the appellant ought to be longer continued as administrator. Such allegations tend to show that the appellant has been guilty of wrongful, if not fraudulent, acts of such a character that it has entailed a loss upon the estate, which it was bound to administer and look after with care and fidelity, of upwards of $1,000,000, and that it has acted solely in its personal interest, without any regard to the interest of the estate.

I am of the opinion, therefore, for the reasons stated, that the decree should be affirmed. But if my conclusion be incorrect in this respect, then the decree ought not simply to be reversed, but it should be done so only for the purpose of sending the matter back to the surrogate to the end that he may take evidence and make findings upon the issue raised as to the appellant's alleged wrongful acts.