S. Samuel Di Falco, S.
The contestants were cited in this probate proceeding because they were named as beneficiaries in two other wills of the same testator on file in this court (Surrogate’s Ct. Act, § 140). The will offered for probate consists of an instrument dated October 13, 1950 and two codicils executed in 1955 and 1956, respectively. The contestants were named beneficiaries in a will dated March 11, 1925 and in one dated January 14,1931. Between 1931 and 1950, the decedent executed three other wills. The contestants are not mentioned in any will after 1931. Proponents move to dismiss the objections to probate on the ground that the wills under which the contestants claim their status were duly revoked by the testator. They con *43 tend that revocation of both wills was effected, first, by the terms of the will executed in 1938; and secondly, by the act of the testator in tearing his signature from the earlier wills.
The right to file objections to the probate of a will is granted by statute to a legatee ‘ ‘ in any other will or codicil alleged to have been made by the same testator and not duly revoked by him” (Surrogate’s Ct. Act, § 147). The Surrogate has the power to determine, as a preliminary issue, who are the persons entitled to contest a will (Matter of Cook, 244 N. Y. 63, 72), and thus it is possible that in a proper case, the issue of revocation of an earlier will might become the subject of preliminary inquiry. The question of separate trials of different issues, however, rests in the discretion of the court. (Matter of Albright, 309 N. Y. 126, 129; Flynn v. Royal Development Co., 265 App. Div. 592, 593.) The practice in the Surrogate’s Court is to try first all of the issues relating to the will bearing the latest date. It is thought that this order of trial will save time and expense and will expedite the administration of assets. (Matter of McCabe, 116 Misc. 637, 639; Matter of Johnson, N. Y. L. J., March 4, 1941, p. 979, col. 1 [Foley, S.].) Generally, the courts have refused to try separately and as a preliminary issue the matter of the revocation of the will from which contestants derive their status, unless it appeared that time and money would be saved by a separate trial of the question of status. (Matter of Rose, 185 Misc. 33; Matter of Cohen, 151 Misc. 98; Matter of Aims, 199 Misc. 185; Matter of Hendrickson, 99 N. Y. S. 2d 664.) Where the trial of the issue of status will require as much or more time than the trial of the main issues and will entail as great or greater expense than the trial of the main issues, the interests of justice are better served by an immediate trial of the central issues of the proceeding.
The proponents contend that the earlier wills were revoked by one duly executed on November 30,1938. In order to succeed on that issue, proponents must prove the 1938 will. They believe that it will be easier to prove that will than it will be to prove the 1950 will because the decedent was then younger, far more active in the business and the social world and in better physical health. However, there have already been extensive examinations in connection with the propounded instruments. If the court .should set down for trial the proof of the 1938 will, there must necessarily be a new set of examinations respecting the earlier will and extensive preparations will have to be made for trial of the subordinate issue. Despite the proponents’ belief that the trial of the 1938 will should be simpler than that of the 1950 will, there is no assurance that in fact it will be *44 more brief or more inexpensive. There is the certainty, however, that even if the proponents prove beyond doubt the validity of the 1938 will, they still must establish to the satisfaction of the Surrogate “the genuineness of the [1950] will, and the validity of its execution.” (Surrogate’s Ct. Act, § 144.) It seems to the court, therefore, that a separate trial of the 1938 will would serve only to increase inordinately the time and expense of this contest.
The question of revocation by act of the testator on the face of the wills presents slightly different considerations. The wills executed prior to 1950 were drafted by a lawyer who represented the testator up to the time of that lawyer’s death. The 1950 will and codicils were drafted by a different attorney. After the probate petition was filed, the firm with which the deceased attorney had been associated, filed four wills which were in the firm’s safe. Another will, executed in 1949, is missing. The signature of the testator is torn from the 1925 will and the 1931 will. The condition of these wills is such that if they had been in the decedent’s possession and no evidence was available except the evidence of destruction of the pages which presumably contained the signature, the presumption of destruction by the decedent, animo revocandi, would be unavoidable. However, these wills were not in the decedent’s custody at all. They were preserved by his former attorney up to the time of the attorney’s death, and thereafter by the firm. At the moment, no one knows who tore the wills or when they were torn. There are no memoranda, diary entries or reports of any action of the decedent in respect of these wills. The proponents, on this issue, obviously believe that they will be so served by presumptions that the issue will largely resolve itself in their favor.
The courts appear to segregate the issues more readily when the question of revocation arises from destruction of the will rather than from formal revocation by subsequent instrument. (See Matter of Dicks, 267 App. Div. 117; Matter of Fehringer, 183 Misc. 438.) An issue may be very readily disposed of when it is an issue of law only and the relevant facts are not in dispute. Here, however, the matter cannot be so readily resolved.
The presumption of revocation arises in cases where the will has been in the custody of the decedent. (2 Page, Wills, § 874; 1 Davids, New York Law of Wills, § 380.) The same presumption does not arise, however, when the will was in the custody of another. The rule, cited with approval in Matter of Hopkins (109 App. Div. 861, 867), is stated thus: “ The rule of evidence in the ecclesiastical courts, in regard to the presumptive revocations, from the absence or mutilation of the will, seems to be, *45 that if the will is traced into the testator’s possession or custody, and is there found mutilated in any of the modes pointed out in the statute for revocation, or is not found at all, it will be presumed the testator destroyed or mutilated it, animo revocandi, but if it toas last in the custody of another, it is incumbent upon the party asserting revocation, to show the will again in the testator’s custody, or that it was destroyed or mutilated by his direction. ’ ’
It appears, therefore, that the issue of revocation by mutilation cannot be resolved on the present papers and cannot be disposed of until all parties have been afforded an opportunity to investigate the facts and present such relevant evidence as is available. The attorney who drew the wills prior to 1950 is dead. Apparently the wills remained in the safe of his firm. The contestants will find it necessary to make extensive inquiry among the members of the firm and their employees, or past employees, in order to determine whether the destruction of portions of the earlier wills was by act of the decedent or by act of another.
It is apparent that the issue of revocation by mutilation is not one capable of quick and simple disposition. The court assumes that both sides will undertake all investigation and examinations that the nature of the inquiry demands. When all the inquiry, examinations, and hearings are concluded, no matter what the result, the matter of proving the last will must still go forward. It might, in one contingency, be unhampered by contestants, but the burden yet remains with the proponent to satisfy the court of the validity of the propounded will and the genuineness of its execution.
Moreover, the question of revocation by mutilation will undoubtedly become so complicated by other considerations that it will be impossible of solution without costly and time consuming appeals. The proponents recognize that the revocation by mutilation is closely bound to revocation by the 1938 instrument, and they request a preliminary trial of both acts of revocation. The motion papers make it plain that direct proof of the act of tearing the wills is not at all probable. If it ultimately should become possible to draw the inference that the testator himself tore the wills, the contestants would certainly make the time and the conditions of that act an important issue. If the will were mutilated after the execution of the 1938 will, or after the 1939 will, or after the 1949 will, and were conditioned on the validity of one or more of them, the question of conditional revocation would be presented so that the validity and genuineness of one or more of the later wills might have to be determined. *46 If the revocation by tearing were accomplished on the condition that a later will became effective and the condition were not fulfilled, there would necessarily be presented for decision the application of a doctrine, that is still the subject of a difference of judicial opinion. (Matter of Macomber, 274 App. Div. 724, contra Matter of McCaffrey, 174 Misc. 162 [Foley, S.].) Undoubtedly the matter could not be determined except after exhausting all remedies of appeal.
One of the primary and fundamental rules governing the separability of issues for trial is that the trial of issues “ should be conducted by the surrogate in a manner best calculated to elicit the truth.” (Matter of Zimmerman, 104 Misc. 516, 521.) The other factors which are to guide the court are the saving of time of court and counsel, minimizing the expense to be incurred by the parties and expediting the administration and disposition of the assets. It seems to the court that all of these considerations require us to get to the central and decisive issues as quickly as possible. A preliminary trial that can consume as much or even more time than a trial of the main issue, that may cause as great expense as the trial of the main issue, and that carries no reasonable assurance that it will be decisive, ought not to be imposed upon the parties. This court will not direct such a mode of trial.
In the exercise of the discretion of the court, the motion to strike out the objections, or in the alternative, to direct a preliminary trial of the status of contestants, is denied.