S. Samuel Di Falco, S.
The petitioner seeks fixation of his compensation for legal services allegedly rendered to the estate, and he requests that such compensation be paid from the general estate. (Surrogate’s Ct. Act, § 231-a.) The petitioner lists two different categories of services: (a) those relating to settlement of the Woodbury objections; and (b) those relating to the claim of J. Gordon Douglas, Sr.
The will of this testator named as executors the widow, a trust company and J. Gordon Douglas, Jr. It was offered for probate by the widow and the trust company. Mr. Douglas was not satisfied with the benefits which the propounded instruments provided for him, and he did not join in the petition for probate. He subsequently filed objections to the probate of the will, although his counsel regards the objections as merely a mechanical basis for a settlement agreement with the widow and remainderman of her trust rather than as a contest of the will. The petitioner was the attorney for J. Gordon Douglas, Jr., and the status of Douglas and the petitioner in the probate proceeding was the subject of considerable argument at the hearing.
The petition for the probate of the will was filed in November, 1957. J. Gordon Douglas, Jr., was a party respondent in the probate proceeding by virtue of his nomination as an executor and trustee (Surrogate’s Ct. Act, § 140) and also because he was a beneficiary under prior testamentary instruments. He did not actually become a contestant on the record until after the settlement of the Woodbury objections had been agreed upon. He was, however, in the nature of an objectant from the beginning. Mr. Douglas appeared in February, 1958 by a firm of attorneys. That notice of appearance described him ‘ ‘ as a legatee ”. The Woodbury objections were filed on March 13, 1958. The contestants were not distributees of the testator but were interested as legatees under two of the several prior wills filed in this court. (See Matter of Irvin, 19 Misc 2d 41.) The petitioner was substituted as attorney for Mr. Douglas by a stipulation that was dated March 18, 1958, was acknowledged and served some days later and was filed in this court on July *801 15. In addition to the stipulation of substitution, the petitioner served and filed a notice of appearance which described his client “as temporary administrator, and as executor and trustee named in the Last. AVill and Testament of the decedent ”.
At the time of the petitioner’s advent in the case, no effort had been made to adjust matters between the Woodbury family and this estate. The proponents at that time were unwilling to make any financial settlement at all with the contestants. An attempt was made by the proponents to litigate the question of the objectants’ status in advance of the probate trial, and it was not until that motion was determined (see Matter of Irvin, supra) that the proponents made any real effort to compromise the issue. Thereafter the objections were settled by payment of $25,000 to the contestants. The payment was made out of the widow’s general legacy. The settlement was arranged by the attorney who represented the widow individually, the attorneys who represented the two proponents and the trial counsel for the objectants. There does not appear to be any contention that the petitioner sat in with them in working out the details. His efforts, if any, seem to be quite independent of those of the proponents and not part of a united plan. An agreement of compromise was drafted by the attorneys for the proponents and it was later submitted to the court together with a petition by the corporate fiduciary for judicial approval of the compromise. The agreement was also submitted to the petitioner, as attorney for Mr. Douglas, because his client’s consent, as a person named in the will as executor, was thought to be necessary under section 19 of the Decedent Estate Law.
The petitioner’s testimony is that, when he was retained by Mr. Douglas, his client told him that he was concerned about the contest initiated by the Woodbury family and the possibility that the estate might be tied up in litigation for some time unless some way could be found to persuade the attorneys on both sides to look favorably toward a compromise. Petitioner discussed the Woodbury objections with the attorneys for the proponent, the attorneys for the widow and the attorneys for the contestants. Initially, neither side was anxious to settle the issues. Petitioner claims that he continued his conferences with the contestants’ counsel, “in the course of which [he] put forth every conceivable argument of which [he] was capable in favor of a reasonable settlement of ‘the Woodbury ’ objections”. Parenthetically, it might be noted that the petitioner was then in the rather odd position of endeavoring to persuade the contestants to agree to settle their objections while at the same time he was preparing to assert similar objections on behalf *802 of his own client. He claims, however, that he did persist and that after innumerable conferences he succeeded in obtaining an agreement from the contestants’ counsel on a settlement for $25,000, and he says that he urged its acceptance on the attorneys for the proponents.
The attorneys for the proponents and the attorney for the widow testified that they never requested the petitioner to make any efforts to bring about a settlement, and that they did not know that he was working to bring about a settlement on behalf of the estate. The attorneys for the proponents and the widow testified that they entered into the settlement negotiations after the preliminary motion had been determined, that they fixed the figure on which the settlement was made, and that they had arranged the settlement. They appear to have regarded the petitioner as an opponent rather than an ally and to have asked no aid or assistance from him. The agreement of compromise was dated June 6, 1958, was acknowledged by both proponents on that date, was acknowledged by the contestants on June 10 and by the remainderman on June 18. The agreement of compromise was not acknowledged by Mr. Douglas until July 18. It appears that the petitioner was not willing to have his client sign the compromise agreement until an agreement had been worked out in principle to make a settlement with his own client. An agreement in principle was reached by the petitioner and the other attorneys and thereafter the petitioner’s client executed the Woodbury agreement.
Insofar as this record shows, neither at the time that the Woodbury compromise was worked out nor at the time of the execution of the agreement by Mr. Douglas, did the petitioner ever inform other counsel that it was his efforts which produced the agreement or that he deserved credit for effecting the settlement. Whatever efforts the petitioner might had made to produce the settlement appear to have been known chiefly to his client and to himself, and, perhaps, to the contestants’ attorneys, who were not called upon to testify herein.
It is not disputed that the attorneys for the proponents did discuss the Woodbury objections with the petitioner. Indeed, the attorneys for the proponents stated that the petitioner had suggested settling those objections at a figure twice the amount finally agreed upon. Moreover, it is patent that the petitioner had a very real interest in the settlement of those objections because the disposition of those objections was necessary to an advantageous settlement of his own client’s case. The petitioner was interested in a settlement for his client rather than a lawsuit He could hardly expect a substantial settlement of his *803 own case if the proponents were forced to try the very same issues with another set of contestants. In disposing of the possibility of a contest from another quarter, the petitioner was obviously advancing the course of his own client. He may well have added his voice to those counselling settlement. What he did, does not appear except in his own testimony. It is clear, however, that whatever he did in this connection was done as attorney for J. Gordon Douglas, Jr., without any request from the proponents and without ever informing them of his efforts in that direction. The petitioner’s contention must, therefore, be that the legal services were necessarily incurred by a fiduciary of the estate in the execution of his office, or, in the alternative, that although the services were not rendered to one who could bind the estate, they should be paid out of the general estate because they benefited the entire estate. The petitioner values these services at $16,000.
An executor, administrator or temporary administrator is entitled to legal advice and assistance during the course of his administration of the estate, and reasonable counsel fees necessarily incurred in the administration of the estate are a proper estate charge. (Surrogate’s Ct. Act, § 222.) Moreover, a person named as executor in a will is entitled to the reasonable legal expenses incurred by him in an attempt to propound the will, regardless of his success or failure, provided that he acted in good faith in offering the will for probate. (Surrogate’s Ct. Act, § 278.) In the probate proceeding, the petitioner did not represent a temporary administrator nor an executor named in the will, except in a minor instance hereinafter noted. A temporary administrator is appointed to conserve the assets during the period in which no regular fiduciary is acting. The temporary administrator has no duty to perform with respect to the probate contest, and the settlement of the objections therein was of no concern to him. As executor named in the will, the petitioner’s client was a necessary party respondent in the probate proceeding, but, inasmuch as he became a contestant in his individual status and worked for his own personal benefit, he was opposed in interest to those who propounded the will. Under no reasonable view of the situation could he be regarded as a person who “ propounds the will for probate ” (Surrogate’s Ct. Act, § 278). It seems equally clear that the petitioner could not be regarded as having rendered necessary legal services for an estate fiduciary so as to entitle him to compensation under the rule expressed in section 222. He could not be working for the probate and against the probate at one and the same time.
*804 It is true that an attorney may become entitled to compensation from the general estate for legal services which have resulted in a benefit to the estate. (Matter of Wiltshire, 4 A D 2d 981; Matter of Lounsberry, 226 App. Div. 291; Matter of Graves, 197 Misc. 638; Matter of Smith, 167 Misc. 95; Matter of Geller, 167 Misc. 578; Asch, Compensation of Counsel Under Section 231-a of the Surrogate’s Court Act, 26 N. Y. U. L. Eev. 322, 325-327.) The term “benefit to the estate ” has not been confined to precise limits (see Matter of Pelgram, 146 Mise. 750, 756), and it is not necessary to attempt to define it here. It should be clear beyond the possibility of reasonable argument that when the attorneys for the proponents, the principal beneficiary and the contestants complete negotiations for a settlement of that contest, the attorney for a respondent beneficiary, who is also a contestant, cannot fairly be said to have benefited the estate by his independent efforts to steer the parties toward a compromise of that contest, even if we were to assume that his independent and unsolicited efforts did contribute to the result. The estate is not benefited in any real sense by the efforts of volunteers to help the parties reach a result which they may well reach without any such assistance. In the pending case, moreover, there is no evidence to indicate that the petitioner’s services in any way did contribute to the result. Insofar as this record shows, the same settlement would have been consummated without his assistance. Indeed, the attorneys for the proponents were not even aware of his efforts to assist them.
The court, therefore, holds that the petitioner is not entitled to the compensation requested by him for services in settling the so-called Woodbury objections. The court has indicated above that in a limited area the petitioner is entitled to some compensation from the estate. When the settlement was tentatively agreed upon by the parties in interest, a compromise agreement was drafted and a petition was presented for judicial approval under section 19 of the Decedent Estate Law. Although it would seem that the only persons affected by the compromise were the widow and the contestants, the attorneys appear to have been under the impression that a proceeding under section 19 of the Decedent Estate Law was necessary. Having determined upon such a procedure, the compromise agreement was presented to Mr. Douglas in his status as one of the persons named executor in the will. He was requested to execute the agreement in that capacity. He was entitled to consult counsel and to obtain such legal advice as was necessary under the circumstances. It is to be noted that, as a contestant himself, *805 he and his counsel had already investigated the grounds for possible contest. His own objections have been settled, and his counsel presumably has been compensated by him for legal services rendered in the course of that compromise. For his services rendered to the nominated executor in connection with the execution of the agreement, the court fixes his reasonable compensation at $1,500. The petitioner’s claim for compensation for other services rendered in connection with the Woodbury objections is dismissed.
The second group of services for which the petitioner requests compensation relate to the settlement of the alleged claim of J. Gordon Douglas, Sr., the father of the petitioner’s client. No claim had actually been filed by Mr. Douglas, Sr. The petitioner says that the basis of this claim was an alleged joint brokerage account wherein the decedent’s operations resulted in losses to the claimant. It was asserted that the decedent had promised to reimburse the claimant for such losses. The claim is said to be in excess of $250,000. The petitioner alleges that the claimant had submitted voluminous files to him and that he had expended much time in examining and analyzing the papers. As a result of his examination, the petitioner says that he became convinced of the validity and enforcibility of the claim but that he was able to persuade the claimant 1 ‘ in consideration, among other things, of his high regard for the decedent and his desire to avoid casting aspersions upon his memory, to withhold his claim and to execute a release to the estate without any cost whatsoever to the estate.” The petitioner values his legal services in connection with this claim in the sum of $10,000.
There is no proof in the present proceeding with respect to the validity and enforcibility of the claim. It appears without dispute that, at the time that the objections of Douglas, Jr., were compromised, the petitioner delivered certain releases to the estate, including releases by his client’s mother and father," as well as by the client himself. The attorneys for the other fiduciaries have testified that these releases were delivered as part of the consideration for the compromise of the objections of Douglas, Jr., and that the delivery of releases by all members of the Douglas family was a stated condition for the making of the compromise. Insofar as this record shows, there was never any discussion by the petitioner of a claim of Mr. Douglas, Sr.
Moreover, the will of this testator had not been admitted to probate at the time that the group of releases were delivered. The petitioner did not represent any estate fiduciary then in office, except the temporary administrator. A temporary admin *806 istrator’s function is to conserve the assets of an estate. He has no authority to pay obligations or to compromise them without the permission of the court expressed in a formal court order. (Surrogate’s Ct. Act, §§ 127, 129.) The court holds that the petitioner is not entitled to any compensation for the alleged services pertaining to the claim of J. Gordon Douglas, Sr. Submit decree on notice accordingly.