(October 10, 1995)

■ In the Matter of the Estate of DORIS DUKE, Deceased. BERNARD LAFFERTY et al., as Removed Preliminary Coexecutors, Appellants; ALEXANDER D. FORGER et al., as Temporary Administrators, et al., Respondents. [632 NYS2d 532] —Order and decree (one paper), Surrogate's Court, New York County (Eve Preminger, S.), entered on or about May 22, 1995, which removed the preliminary coexecutors, and appointed Alexander D. Forger, Esq. and Morgan Guaranty Trust Company as temporary administrators, affirmed, without costs.

The Surrogate's removal of the preliminary coexecutors pursuant to SCPA 711 and 719 was a proper exercise of discretion, and no evidentiary hearing was required under the particular circumstances. While the Surrogate's characterization of the facts as "undisputed" may not have been technically accurate, the unfitness of the coexecutors was established by a combination of documentary proof and the coexecutors' own concessions, and the totality of written submissions failed to raise any triable issue of fact. We note that the coexecutors were not prejudiced in any manner by the informality of the investigation and report completed by limited temporary administrator Richard H. Kuh, since the Surrogate's decision expressly disclaimed reliance on the report's unproven allegations.

The unfitness of the coexecutors to take responsibility for this $1.2 billion estate, bequeathed primarily to charity, was manifest. While " 'courts will not undertake to make a better will nor name a better executor for the testator' " (*Matter of Flood*, 236 NY 408, 410), the standard of behavior of a fiduciary is "[n]ot honesty alone, but the punctilio of an honor the most sensitive" (*Meinhard v Salmon*, 249 NY 458, 464).

The Surrogate properly concluded that the individual coexecutor, Lafferty (the decedent's former butler) wasted estate assets by collecting a substantial salary and lavish fringe benefits, supposedly as a "live-in" estate employee, living as if the estate properties were his own. There was no justification for these emoluments, since Lafferty was also entitled to lucrative executor's commissions. This also constituted self-dealing, since this dual capacity was authorized by no one except Lafferty himself, and the corporate coexecutor appointed and removable by Lafferty under the terms of the will.

The Surrogate also properly concluded that Lafferty routinely commingled personal and estate assets, a serious breach of fiduciary duty for which repayment is no defense (*see*, EPTL 11-1.6).

The Surrogate also properly concluded, based on medical records showing repeated hospitalization for drunken binges, that Lafferty was unfit by reason of drunkenness (SCPA 711 [2], [8]). The Surrogate was not obligated to expose the estate to the risk that Lafferty's drunkenness might affect his performance.

The Surrogate also properly concluded that the corporate coexecutor created a conflict of interest (see, *Matter of Donner*, 82 NY2d 574, 584) by granting Lafferty unsecured loans in the amount of $825,000, to pay for his "personal needs," *i.e.*, still more luxuries. This gave the corporate coexecutor a financial stake in Lafferty's continued service as an executor, so that he could repay the loans out of his commissions, a conflict which was actual and not theoretical (compare, *Matter of Rimland*, 205 AD2d 693, 694, *with Matter of Marsh*, 179 AD2d 578, 580), since it was apparent that the corporate coexecutor improperly acquiesced in Lafferty's assorted misconduct (see, *Matter of Rothko*, 43 NY2d 305, 320). Concur—Murphy, P. J., Ross and Asch, JJ.

Rubin and Tom, JJ., dissent in a memorandum by Rubin, J., as follows: At issue on this appeal is the propriety of the removal, pursuant to SCPA 719 (10), of the preliminary coexecutors, appellants Bernard Lafferty and United States Trust Company of New York, designated under the will of Doris Duke. Under the circumstances, the removal of the designated coexecutors, without an evidentiary hearing, is truly an extraordinary measure. The estate is represented by a corporate fiduciary with substantial resources, and there is no suggestion that any impairment of estate assets will go without remedy.

Whether removal of the coexecutors will ultimately be warranted is an issue not properly before the Court at this juncture. In view of the failure to conduct an evidentiary hearing, the various reasons advanced by the Surrogate to support replacement of the coexecutors are not sustained by proof of serious misconduct, which the law requires to justify supplanting the decedent's choice of executors. Moreover, because the record is devoid of findings of fact, it is insufficient to permit appellate review of the adequacy of the proposed grounds for removal. Finally, without a judicial accounting, the current record is insufficient to support even the imposition of a surcharge against the coexecutors. Therefore, the summary removal of the preliminary coexecutors must be regarded as contrary to law.

The interests of the residual charitable beneficiaries of decedent's estate are represented by the Attorney-General,

who submits that while, "on its face, [SCPA 719] invests the Surrogate with sweeping power * * * its exercise must be used only in egregious cases in which the facts are truly undisputed. Because the Surrogate's order was entered without a hearing and is plainly contested over what the order called 'undisputed facts,' it should be reversed." His brief further notes that permitting the removal of a designated executor absent demonstrated substantial grounds sets an unfortunate precedent with an undesirable result: "Nominated fiduciaries may be judicially removed without a hearing and replaced with persons unknown and perhaps unwanted by the testators."

As a practical matter, the Attorney-General maintains that litigation of this preliminary matter, involving the administration of the estate, will generate "greater expense than the alleged financial malfeasance referred to in the order", with the ultimate cost borne by the residual charitable beneficiaries. "Because the route the Surrogate chose to address the allegations of misconduct (i.e., the appointment of a limited temporary administrator to investigate and report) was unconventional, any hearing emanating from that route undoubtedly will be beset with untested (and probably appealable) procedural issues." He urges this Court to "direct that all issues regarding alleged misconduct by the preliminary executors be resolved promptly in a judicial accounting proceeding."

There is considerable merit to this position. The statutory language providing that "the court may make a decree suspending, modifying or revoking letters issued to a fiduciary * * * without a petition or the issuance of process" (SCPA 719) should be read to mean only that no formal notice is required to bring on a hearing for removal. It does not mean that the dismissal of an executor by the Surrogate may rest on less than compelling grounds (SCPA 719 [10]); and it certainly does not mean that such action may be based on a record that is less than adequate to permit appellate review.

The concerns raised by the Attorney-General about the cost of this litigation have already been substantiated. The New York Law Journal (Aug. 7, 1995, at 1, col 1; Aug. 8, 1995, at 1, col 1) reports that the limited temporary administrator, Richard Kuh, Esq., submitted a request to the Surrogate for payment totalling $620,000, including investigative services in the amount of $364,629, plus $32,603 in disbursements and $222,000 in consultants' fees. Furthermore, the purported findings of fact made by the court—and the evidentiary value of the investigative report on which the decree rests—are of questionable value (Matter of McDonald, 160 App Div 86, 87, affd 211 NY 272).

As a consequence of the failure to conduct an evidentiary hearing, the record on appeal is insufficient to permit adequate review of the Surrogate's determination (*Matter of Farber*, 98 AD2d 720, citing *Matter of Burns*, 1 AD2d 505, 507). The "clear showing of serious misconduct that endangers the safety of the estate" (*Matter of Israel*, 64 Misc 2d 1035, 1043) has not been made with respect to Bernard Lafferty (*Matter of Jung*, 205 App Div 37; *cf.*, *Matter of Flaum v Birnbaum*, 191 AD2d 227), and the convincing demonstration of misconduct that would warrant the removal of the corporate fiduciary is not supported by any evidence in the record before us. United States Trust Company, in its brief, asserts that there is no reported case in this jurisdiction in which a corporate fiduciary has been removed as an executor of an estate, and no such case has been brought to the attention of this Court by any other party.

It has long been recognized that a testator is entitled to designate who will settle her estate from among those qualified by statute (*Matter of Leland*, 219 NY 387, 393). Case law therefore holds that "the power to revoke should be exercised sparingly" (*Cooper v Jones*, 78 AD2d 423, 429, citing *Matter of Israel*, *supra*). "Removal is a draconian step and the courts remove fiduciaries sparingly, typically when the estate fund has been jeopardized or the fiduciary has seriously impeded estate administration. See *Matter of Braloff*, [3 AD2d 912, *affd* 4 NY2d 847]. Less drastic alternatives includes [*sic*] directing the fiduciary to post a bond, surcharging her for damages caused by her negligent or wrongful behavior, or denying her commissions" (Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 58A, SCPA 711, at 557).

Although many charges have been leveled against Mr. Lafferty and United States Trust Company, it has yet to be established that the estate has sustained any loss, much less been placed in jeopardy (*see*, *Matter of Greenidge*, 134 AD2d 592, 593, *appeal dismissed* 71 NY2d 993, *lv denied* 72 NY2d 806; *Matter of Vermilye*, 101 AD2d 865). Nor has it been shown that any impediment has been placed in the way of its administration (*Matter of Braloff*, *supra*, at 913; *In re Levinstim's Estate*, 195 NYS2d 110, 113). The burden of proof is clearly on the party seeking to disqualify an executor for mismanagement of the estate (*Matter of Krom*, 86 AD2d 689, 690, *lv dismissed* 56 NY2d 505). Mere "lack of business experience and capacity * * * do not disqualify" Mr. Lafferty from serving as executor (*Matter of Leland*, *supra*, at 393); an executor is entitled to rely on the assistance of qualified professionals in fulfilling his fiduciary duties (*see*, *e.g.*, *Matter of Gold-*

*stick*, 177 AD2d 225, 236; *Matter of Irvin*, 24 Misc 2d 799, 803; *Matter of Stege*, 164 Misc 95, 98). Where the corporate fiduciary is aware of a breach of trust by its coexecutor and makes no attempt to prevent loss to the estate, it is fully accountable (*Matter of Rothko*, 43 NY2d 305, 320).

The objections regarding Mr. Lafferty's suitability to serve as executor are a criticism of his lifestyle. But none of his alleged shortcomings, from his alcoholism to his extravagance, is purported to have been unknown to the testatrix when she appointed him executor in her will. As suggested in *Matter of Leland* (*supra*, at 394), the rules respecting disqualification of a fiduciary are susceptible to more stringent interpretation, "particularly if he had been named as sole executor by the testator with full knowledge of his present condition". Where, as here, the individual executor is assisted by a capable corporate fiduciary, disqualification requires proof tending to show that he is incapacitated by the "want of understanding", which "implies an entire lack of mental capacity" (*supra*, at 392, 393). No such proof has been adduced.

The objections regarding United States Trust Company center on unsecured personal loans extended to its coexecutor. It is suggested that such a course was improvident and creates the appearance of impropriety. From a purely commercial perspective, however, it can hardly be regarded as unsound to loan money—even the better part of a million dollars—to a man receiving a salary of $100,000 a year, who is expected to receive trust income of $500,000 a year for the duration of his life and a commission of $5 million for his services as executor. Finally, the loan may also proceed from a practical appreciation that it is unrealistic to expect Mr. Lafferty, who became accustomed to a high standard of living while in Ms. Duke's employ, to subsist on a $100,000-a-year salary as manager of her properties while scrupulously refraining from applying estate assets, inadvertently or otherwise, to maintain his customary standard of living.

While the corporate fiduciary may have complicated its relationship with its coexecutor by making him its debtor, it has not yet been established that its integrity in carrying out fiduciary responsibilities has been compromised in any way. As this Court stated in *Matter of Foss* (282 App Div 509, 513-514 [Breitel, J.]):

"In the event that the co-executor's apparent conflict of interest should lead to misconduct—the presumption being strongly to the contrary (*Matter of Place*, 42 Hun 658, 4 N. Y. St. Rep. 533, 534 [General Term, First Dept., 1886], affd. 105 N. Y. 629;

*Matter of Forte*, 149 Misc. 327, 334 [Surr. Ct., Kings Co., 1933])—objectants will not be left without remedy (Surrogate's Ct. Act, § 99 [now SCPA 711, 719, in part]). * * *

"It would be a serious matter to make any claim of conflict of interest a ground for disqualifying designated executors. Not only would it threaten to substitute the legatees' desires and views for the views of the testator, it would also undoubtedly engender a multitude of proceedings. Few estates would be certain to be free from such attack. Many estates would be subjected to extended proof-taking to determine whether the claimed conflict in fact existed.

"Misconduct, not conflict in interest, merits removal of a fiduciary (Surrogate's Ct. Act, § 99). The statute provides for resolving claims between the estate and its representative (Surrogate's Ct. Act, § 209 [now SCPA 1805]). This is reasonable. Any other view would automatically disqualify from appointment as executor a partner, a joint owner of property, a legatee, a creditor, a debtor, a distributee, a spouse, or one who is a party to an executory contract with the testator. Few would remain eligible."

It should be noted that no objection to the executors nominated by the decedent has been raised by the residual charitable beneficiaries, which will receive the bulk of the estate. Objections to the preliminary executors were raised by motion of Harry B. Demopoulos, M.D., who was named as executor in the codicil (dated March 13, 1991) to a prior will dated July 28, 1987. Other objections were raised by Irwin Bloom, decedent's former accountant, who is embroiled in a dispute with the estate over payments under a severance agreement. Still other allegations have been advanced by three disgruntled former employees of decedent who have commenced separate actions against each appellant. Their action against Mr. Lafferty was largely dismissed for failing to state a cause of action (*Bostich v Doyle*, Sup Ct, NY County, May 5, 1995, Shainswit, J., index No. 132757). Their action against United States Trust Company for defamation was dismissed outright for similar reasons, and sanctions were imposed against the parties and their attorney for bringing a frivolous lawsuit. The court noted: "It is apparent that plaintiffs' sole motive in bringing the suit against this defendant is to obtain a cash recovery from the deepest pocket available" (*Bostich v United States Trust Corp.*, NYLJ, Aug. 30, 1995, at 21, col 5, at 22, col 2 [Sup Ct, NY County, Shainswit, J.]). With respect to allegations raised by the former employees against appellants and their counsel, the court stated: "[P]laintiffs' efforts to

convince this court that [United States Trust], along with Lafferty, Doyle and Watson, were 'Co-Fiduciaries working together to conceal massive criminal wrongdoing from the public' * * * totally missed the mark, in light of the complete lack of factual support that exists for these extravagant claims" (*supra*, at 22, col 1).

While this Court has the highest regard for the temporary administrator appointed by the Surrogate and would consider him a far superior executor than Mr. Lafferty, that is simply not the criterion to be utilized in setting aside the testatrix's choice of fiduciary. As ample precedent makes clear, a testator's selection of an executor is not readily set aside (*Matter of Leland*, *supra*, at 393). While Mr. Lafferty is often referred to as Ms. Duke's butler, the relationship far exceeded that of employer and employee. As the limited temporary administrator pointed out in his investigative report, it was "akin to a tender and devoted mother-son relationship." Mr. Lafferty was her personal assistant and confidant, helping Ms. Duke with her personal affairs, the operation of her various properties and the supervision of over 100 employees. Her accountant noted that the property and department managers began to report directly to Mr. Lafferty at a time when Ms. Duke was still making the ultimate decisions regarding her affairs. Removal of her chosen executor, without a hearing or the requisite proof of malfeasance and injury to the estate, is contrary both to the wishes of a sophisticated, strong-willed and determined testatrix and to fundamental principles of decedent-estate law.

As expressed by the Court of Appeals in *Matter of Leland* (*supra*, at 393): "It may be broadly stated that the common law favors the rule that no restriction should be placed upon the choice of an executor, even though unsuitable persons are allowed to exercise the trust to the possible prejudice of creditors and legatees. Modern legislation enlarges the control of probate courts over improper testamentary appointees. In New York the necessary qualifications of an executor are described with minuteness. (Code Civil Procedure, §§ 2564-2567 [*see*, SCPA 707-710].) But the testator still enjoys the right to determine who is most suitable among those legally qualified to settle his affairs and execute his will, and his solemn selection is not lightly to be disregarded. Appointment is not to be refused merely because the testator's selection does not seem suitable to the judge. * * * The courts will not undertake to make a better will nor name a better executor for the testator."

A hearing is required to decide if any injury to the estate

has been occasioned or is threatened by the alleged excesses of Mr. Lafferty or by the conduct of the corporate fiduciary. Accordingly, the order of the Surrogate should be reversed, without costs, and this matter remanded for findings of fact and conclusions of law whether grounds exist for the removal of the preliminary coexecutors designated in decedent's will.