(Decided 21st June, 1883.)

ANN C. KELLEHER *vs.* OWEN THOMAS KERNAN, and DAVID P. KERNAN, by their mother and next friend, CATHERINE A. KERNAN.

*Instrument propounded as a Will—Admissibility of Parol evidence to show Purpose of Testator.*

The following paper was propounded as a will : " Baltimore, July 20th, 1882. In anticipation of my departure from the City of Baltimore, and to provide for possible contingencies, I hereby give, bargain and sell and transfer unto my daughter Ann C. Kelleher, her personal representatives and assigns, all my machinery, horses, wagons, goods, chattels and effects, which I now have, or may hereafter acquire, or possess, and all moneys, claims and demands to which I am, or may be hereafter, entitled, reserving to myself the use of the same, and the right to dispose of the same otherwise, if I deem proper. Witness my hand and seal this twentieth day of July, 1882.

his
OWEN ✛ KERNAN, [SEAL.]

"Witness:—James McColgan."  mark

Kelleher *vs.* Kernan.

The maker was nearly eighty years old. He made the expected trip, returned safely, and died shortly afterwards. HELD:

1st. That the paper ought to be admitted to probate as a will.

2nd. That parol proof respecting the testator's purpose and efforts to provide for his daughter, in anticipation of his trip, was admissible, for the purpose of determining whether that condition of mind, which the law regards as testamentary, existed.

APPEAL from the Orphans' Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, STONE, ROBINSON, and IRVING, J.

*James A. L. McClure,* and *William Pinkney Whyte,* for the appellant.

*John P. Poe,* for the appellees.

IRVING, J., delivered the opinion of the Court.

The question for determination in this case, is whether the Orphans' Court for Baltimore City erred in refusing probate to the following paper which was propounded as the last will and testament of Owen Kernan:

"BALTIMORE, July 20th, 1882.

"In anticipation of my departure from the City of Baltimore, and to provide for possible contingencies, I hereby give, bargain and sell and transfer unto my daughter, Ann C. Kelleher, her personal representatives and assigns, all my machinery, horses, wagons, goods, chattels, and effects, which I now have, or may hereafter acquire, or possess, and all moneys, claims and demands to which I am or may be hereafter entitled, reserving to myself the use of the same, and the right to dispose of the same

otherwise, if I deem proper. Witness my hand and seal this twentieth day of July, 1882.

his

OWEN ✛ KERNAN, [SEAL.]

mark

"Witness: James McColgan."

The maker was an old man, nearly eighty years old. He made the expected trip, returned safely, and died shortly afterwards. In *Masterman vs. Moberly*, 4 *Eng. Ecclesiastical Reports*, 108, it is stated to be the "settled law that if the paper contains the disposition of the property to be made after death, though it were meant to operate as a settlement, or a deed of gift, or a bond; though such paper were not intended to be a will, nor other testamentary instrument, but an instrument in different shape; yet if it cannot operate in the latter, it may nevertheless operate in the former character." Courts do this to carry out the intention of the maker, who, having attempted to make disposition of his property after his death in a particular way, and by an instrument not called a will, but which will not effect the maker's purpose, except as a will, dies without making any other disposition of it. If the disposition necessarily takes effect after death, and the intention is clear, *that* will be held to be a will, which the maker supposed to be some other kind of paper. In such case it must appear certainly what the testator wanted to do, and that he thought he was effectually accomplishing it by the paper made, in order to justify the holding an instrument to be testamentary which was executed as and for something else; but if it so appears, many adjudged cases establish the law to be as stated. *Habergham vs. Vincent*, 2 *Ves., Jr.*, 231, is a leading case on the subject. In that case Justice BULLER replying, in his opinion, to the argument that the maker did not intend to make a will, said, "whether the testator

would have called this a deed or a will is one question; whether it shall operate as a deed or a will is a distinct question that is to be governed by the provisions in the instrument. A deed must take place on its execution or not at all. It is not necessary to convey an immediate interest in possession, but it must take place as passing that interest to be conveyed at the execution; but a will is quite the reverse; it can only operate after death."

In *Carey, et al. vs. Dennis and Wife,* 13 *Md.,* 17, this Court not only adopted the law as laid down by the Chancellor, and Justices WILSON and BULLER, who sat with him in *Habergham vs. Vincent,* but also Justice BULLER's language; and held certain bonds for the payment of money by the maker—(professing to be executed for value received, and drawing interest from date; which were not delivered to the obligees, but to another to be delivered to the obligees after the maker's death)—to be testamentary papers. This Court says in that case that the rule is, that "when an instrument does not operate *inter vivos,* but is made to depend for its whole operation upon the death of the maker to consummate it, then it can only take effect as testamentary." We refer to a few of the cases which support this doctrine. *Cross vs. Cross,* 55 *E. C. L.,* 714; *Cock vs. Cooke, L. R.,* 1 *P. & D.,* 241. In *Rehn vs. Coles, L. R.,* 2 *P. & D.,* 362; *Att'y Gen'l vs. Jones, et al.,* 3 *Price,* 369; *Jackson vs. Jackson's Adm'r,* 6 *Dana,* 257; *Morrill vs. Dickey,* 1 *Johns. Chan.,* 153; *Watkins, et al. vs. Dean, et al.,* 10 *Yerger,* 321; *Walker vs. Jones,* 23 *Ala.,* 448; *McGee vs. McCants,* 1 *McCord,* 517; *Welburn vs. Weaver, et al.,* 17 *Ga.,* 267; *Johnson, Adm'r vs. Yancey, et al.,* 20 *Ga.,* 707; *Turner, et al. vs. Scott,* 51 *Pa. St.,* 126; *Daniel vs. Hill,* 52 *Ala.,* 430; *McBride, et al. vs. McBride, et al.,* 26 *Grattan,* 480. In the last mentioned case Judge STAPLES concisely states the law thus, "All the authorities hold, indeed it is very clear, it is not necessary to the validity of a will, that it should have a testamen-

tary form, or that the decedent should know he had performed a testamentary act, or that he should intend to perform such act. A deed poll, or an indenture, a bond, a marriage settlement, a letter; a promissory note, and the like have been held valid as a will." To prevent misapprehension it is proper that we add, that while it may not be necessary for the maker to know what he is doing, is, in fact, a will, or should intend it to be technically such, yet it is indispensably necessary to holding it to be a will, that he should have the will or mind to do that which the paper made seeks to do, and to do it then and by that paper. He must have that which is called the *animus testandi*, although he need not have the purpose to make a will in form, if he is found to have the intention to do, by the paper made, that which a will only can effect. As we read this paper propounded for probate, we are unable to see that it has any effect whatever, unless it be regarded as a will. It disposes of *personal property* only. It takes the form of a deed of gift, or bargain and sale, without any consideration, and without formal acknowledgment before a justice of the peace. It does not give to the appellant any present interest or title to the property enumerated in it. If it had only reserved a life estate to the maker, a present right, to be enjoyed, *in futuro*, would have passed, and the paper then could not have been regarded as testamentary. Had the testator, in addition to the reserved use to himself for life, added a simple power of revocation in a particular way, as was done in *Wall vs. Wall*, 30 *Miss.*, 91, that case would have been an authority to sustain us, if we held the paper in such case to be presently operative. But instead of doing so, the dominion, the absolute ownership, is reserved. He does not reserve the right of revoking that instrument, but the right of doing any thing he pleases with any part of the property. The intended assignee therefore took no interest under the paper, present or prospective, except such as was contin-

gent wholly on the maker's death. His death being necessary to the vesting of any right in her, it was ambulatory entirely, and if it is anything it is a will. It begins with announcing an intended trip away from home, and states that it is made to provide for possible contingencies. Contemplation on the trip brought the reflection that possible contingencies required him to make certain intended provision for his daughter, and not to postpone longer. Possible death before his return was what he clearly meant, and that possibility induced him to provide at once for such contingency.

It is possible he may have thought the paper some kind of a valid instrument different from and other than a will; yet the intention was clear to provide for his daughter in the event of his death; and he intended that paper to carry the property to her, in such event. The case of *Walker vs. Jones*, 23 *Ala.*, 448, is a case like this, in the fact that there was no delivery of the property conveyed by the deed, and not only the use was reserved during life, but the absolute right to exercise ownership over it was reserved. The instrument in that case was in the form of a deed, in the language of one, and was acknowledged *as one* before a justice of the peace; but it was held to be a will. The fact, in the present case, that the maker was about taking a trip away induced him to make the paper then; but because he states his reason, viz., that it was in anticipation of the trip that he makes the provision against "possible contingencies," does not warrant us in holding that the will was wholly contingent in respect to its operation, and that because he did not die during that trip, but returned and died afterwards at home, leaving this paper uncancelled, it can have no operation. From the moment he executed the paper he must have intended it to operate if he died afterwards and before starting away. It could not have had reference to death occurring *only* during that absence. In reserving a life estate to

himself he must have contemplated something more than the period of his absence, during which he could not and would not use the property. He was not content with reserving the life estate. He reserves the right to dispose of it in any way he chooses. Evidently he was counting on the chances of safe return and possible desire to sell or otherwise turn the property to account and profit. Clearly he intended that paper to express his purposes respecting the property covered by it; and to control its disposition in the event he should die without making some change, or other provision. He intended it as an effective provision, if he did nothing else. The trip might result fatally to him. Hence the incentive to do then what he did do, and what he had hitherto neglected. He states the inducement to action without intending to give it the effect of making the paper contingent. This view is sustained by adjudged cases which, in some instances, in expression, are singularly analogous. In the *Goods of Dobson, L. R.* 1 *P. & D.*, 88, the will reads thus: "In case any fatal accident happening to me, being about to travel by railway, I hereby leave," &c. This was held not to be contingent upon the event of the testator's death on the journey he was about to take when the will was executed. In the *Goods of Martin,* reported in same book, page 380, the testator says, "Being physically weak in health, have obtained permission to cease from all duty for a few days, and I wish, during such time, to be removed from the brig '*Appellina*' to the floating hospital ship '*Berwick Walls*,' in order to recruit my health; and in the event of *my death occurring during such time,* I do hereby will," &c. It was in proof that he recovered from the illness and afterwards frequently expressed the desire that all his available property should go to a certain Orphan Asylum. Sir J. P. WILDE held the will not to be contingent or conditional, and awarded it probate.

In *French vs. French,* 14 *W. Va.*, 459, the will was in these words: "Let all men know hereby, if I get

drowned this morning, March 7, 1882, that I bequeath all my property, personal and real, to my beloved wife, Florence. Witness my hand and seal." Judges HAY-MOND, JOHNSON and MORE concurred in holding this will not to be conditional upon his being drowned that day. The paper was given to his wife when he started. He returned safely and died afterwards, leaving that paper still in his wife's possession, which was, by the decision of a majority of the Appellate Court, sustained as a valid un-conditional will. Without committing ourselves to full approval of these several decisions under their respective circumstances and language employed, we refer to them as vastly stronger cases for holding the will contingent than this one, and where they were held not contingent. In the case under consideration it would seem as if allu-sion was made to the projected trip and the attendant con-tingencies which might occur, only as the inducement for his making the paper, which evidently embodied what he wanted, in any event, to be done with his property. It is almost like the case of *Turver vs. Turver, et al.*, 9 *Peters*, 174, where the testator prefaces his disposition by saying, "Being about to take a long journey, and knowing the uncertainty of life, he deemed it advisable to make a will," which will was held not to be contingent. In the *Goods of Thorne*, 4 *Swabey & Tristram*, a will, in which the tes-tator says, "I request that in the event of my death whilst serving in this horrid climate, or any accident happening to me," &c., was held not to be conditional. If the wills we have referred to were not conditional ones, certainly we ought not to hold this one to be so. The whole justifi-cation for holding any paper, not made as a will, to be the will of the maker, is the furtherance of the testator's wishes. To hold this paper a will, and yet conditional, would cer-tainly not be in accordance with his purpose.

Whether an instrument is to be considered as a will de-pends on the intention of the maker; and the intention

Kelleber *vs.* Kernan.

expressed in the will must govern its construction. 1 *Jarman, (R. & T's Edition,)* 33, *notes.* If the intention is not clearly and satisfactorily expressed, and the paper is not a will in form, but in the form of some other instrument, making disposition of property only after the owner's death, then parol evidence may be resorted to for aid in getting at the intention. But the general rule is that the intention must be gathered from the contents of the whole instrument. *McGee vs. McCants,* 1 *McCord,* 517, and 1 *Jarman,* 34; *Wareham vs. Sellers,* 9 *G. & J.,* 98. Evidence of the circumstances surrounding the testator when he made the will are admissible of course; and such evidence is admissible for the purpose of ascertaining whether the testator, at the time of making the paper, had a purpose to direct the posthumous destination of his property. But when the conclusion is reached that the paper should be regarded as a will, parol evidence cannot be resorted to for the purpose of construction, except where there is latent ambiguity. 1 *Jarman, (R. & T's Edition,)* 726, 727, *and notes.* "The language must be interpreted according to its proper acceptation, with as near an approach to that acceptation as the context of the instrument, and the state of circumstances existing at the time of its execution, will admit of." We regard the proof respecting the testator's purpose and efforts to provide for his daughter in anticipation of his trip as properly received, for the purpose of determining whether that condition of mind which the law regards as testamentary, existed. Beyond that we have disregarded it, and rely wholly on the paper itself in deciding whether it was contingent.

It follows, from what we have said, that the Orphans' Court erred, and the paper propounded should have been admitted to probate.

*Reversed and remanded.*

(Decided 21st June, 1883.)