E. ALEXANDER DIETRICH *v.* SHIRLEY C.
MORGAN ET AL.

[No. 37, April Term, 1941.]

*Decided May 20th. 1941.*

The cause was argued before BOND, C. J., SLOAN,
JOHNSON, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*William L. All,* with whom was *Robert H. Archer* on
the brief, for the appellant.

*H. J. Irvin McCourt* and *Randolph Barton, Jr.,* for the
appellees.

554

FORSYTHE, J., delivered the opinion of the Court.

The appellees in this case, Shirley C. Morgan and the Mercantile Trust Company, trustees under the will of Mary D. Walsh, deceased, and the Most Reverend Michael J. Curley, Archbishop of Baltimore, filed a petition in the Orphans' Court of Harford County, in which it is stated that the said appellees, on November 18th, 1939, filed a caveat to an alleged third codicil to the last will of the said Mary D. Walsh.

The petition asked the Orphans' Court to frame issues of fact, and send them to a court of law for trial. The petition suggested six issues, the first of which is as follows: "(A) Is the paper writing, dated July 27, 1937, purporting to be signed by the said Mary D. Walsh, and to be addressed to Frank B. Cahn & Company, testamentary in character?"

The other suggested issues are not involved in this appeal.

An answer to the petition was filed by E. Alexander Dietrich, the administrator of James Walsh, deceased, a son of the said Mary D. Walsh. The answer excepted to the suggested issue A on the ground "that the issue, as framed, presented an issue of law, and not of fact, and therefore improper for the consideration of a jury."

Before the Orphans' Court acted upon the petition of the appellees, the parties agreed that the suggested issue A "should be submitted to the Orphans' Court for Harford County for determination, reserving to the appellees the same and all rights that they would have had if this agreement had not been made as to any of the other issues asked for."

In accordance with that agreement of the parties, the Orphans' Court of Harford County, on March 21st, 1941, heard testimony, and by its order of March 26th, 1941, denied probate of the said paper writing of July 27th, 1937, as a third codicil to the will of Mary D. Walsh, and it is from that order this appeal is taken.

The said paper writing of July 27th, 1937, which had been offered as a third codicil to the will, and two codicils of Mary D. Walsh is as follows:

"Bel Air, Maryland,
"July 27, 1937.

"Messrs. Frank B. Cahn & Company,
"Equitable Building,
"Baltimore, Maryland.

"Dear Sirs:

"Will you please transfer from my account with you to the account of my son, Mr. James Walsh, $40,000.00. (Forty thousand.) You can do this by selling such securities as you think most advisable for the purpose.

"Thanking you, I remain,

"Very truly yours,
Mary D. Walsh.

"Witnessed by:
"Mary A. Sanford.
"Anna S. Noel."

The only question presented by this appeal is whether the above paper writing is of such testamentary character as to entitle it to be admitted to probate as a codicil to the will of said Mary D. Walsh.

The Orphans' Court of Harford County heard the testimony of three witnesses, Anna S. Noel, Shirley Morgan and Dr. Thomas Payne Thompson. Miss Noel was a witness to the paper in question. She is a practical nurse and had been in attedance on Mrs. Walsh for about twelve days before her death, and remained until after the funeral. Miss Noel identified her signature as a witness to the paper of July 27th, 1937, and said she was asked by Mrs. Walsh, and James Walsh, to sign the paper as a witness; she did not read it, or know what she was signing. Miss Noel then identified the signature of Mary A. Sanford, whose signature also appears on the said paper as a witness. Miss Sanford was out of the room at the time, but was

called in by James Walsh, and Miss Noel and Miss Sanford were asked by both "Mrs. Walsh and her son" to sign the paper as witnesses. Miss Noel said Mrs. Walsh, Miss Sanford and herself signed the paper in the presence of each other. Miss Sanford was not called as a witness, but it was stated she could not, at that time, be located. It does not appear anywhere in Miss Noel's testimony that she was told the nature of the paper she witnessed, nor that she heard it spoken of as a will, or as a codicil to a will.

Dr. Thompson's testimony was directed entirely to the physical and mental condition of Mrs. Walsh for several weeks prior to, and at the time of, her death. He said she was "exceptionally keen for a woman of her age," which was eighty-four or eighty-six years of age when she died. The doctor was of the opinion that Mrs. Walsh's "unusually good mental condition for her age" continued to the day before she died, on July 30th, 1937.

Mr. Morgan, one of the appellees, and co-trustee, with the other appellee, the Mercantile Trust Company, testified that he is a partner in the firm of Frank B. Cahn & Company, the banking firm in which Mrs. Walsh had her money and securities. According to Mr. Morgan's testimony, the paper here in question was sent by him to James Walsh, to be filled out as to the amount, and to be witnessed by a person other than James Walsh. The paper, it appears, was not prepared expressly for Mrs. Walsh, but it is a form letter in regular use by the firm of Frank B. Cahn & Company in handling accounts for their customers. The form letter was sent as a result of conversations, and letters, between the witness and James Walsh, in reference to an effort on the part of James Walsh to have his mother transfer quite a large sum of money from her account to his account. On June 30th, 1937, James Walsh wrote Mr. Morgan as follows:

"James Walsh

"Bel Air, Md.
"June 30th,/37.

"My dear Shirley—

"I spoke to mother about setting aside $10,000 in trust to your company under your management. She was under the impression that it had already been done as a codicil to her will. I am sure she would not make any objection to arranging it the way you suggested, so if you will have a letter drawn up in the proper form. Will you bring it out some day soon so that she can sign it. Mother is a little better but very weak and can not leave her room.

"Sincerely,

"(s) Jimmie."

In reply to that letter, Mr. Morgan, on July 12th, 1937, wrote:

"July 12, 1937.

"Mr. James Walsh,
"R. F. D., Bel Air,
"Maryland.

"Dear Jimmie:

"I have given a good deal of thought to the matter we discussed at your house the other day, and I think the only way to handle it, if your Mother really wishes to do it, would be to transfer money from her account to yours.

"I am enclosing a letter which, if she and you approve, can be signed by her and witnessed by some one else but not by you. You will notice that I have left the amount blank. Your Mother can fill this in for whatever amount she wishes.

"Very truly yours,

"SCM:H
"Enc."

Mr. Morgan further testified that the next he heard of the matter was on the early morning of July 30th, 1937, when he found on his desk the same form letter

he had sent to James Walsh. The amount of $40,000 had been filled in, and it was signed by Mrs. Walsh, and witnessed by Miss Noel and Miss Sanford. It was received through the mail, at the office of Cahn & Company, between the hours of six and eight o'clock A. M. on July 30th, 1937.

According to the testimony of Miss Noel, Mrs. Walsh died at 4 o'clock A. M. on the same day. There was no testimony in reference to who mailed the paper, or who had possession of it between the 27th of July, the date on which it was executed, and the 29th of July, on which date it undoubtedly was put in the mail.

It is the universally accepted law that in order to be considered a will, codicil or testamentary paper, the paper must be a disposition of one's property, to take effect only after death. That is the very essence of a testamentary paper, and it need not necessarily be in the usual form of a will, but whatever the form, it must show, either on its face or by extrinsic evidence, that it was the clear intention that it take effect only after the death of the maker. 68 *C. J.* p. 410; *Miller, "Construction of Wills,"* sec. 1, pp. 2, 3 and 4; *Rabe v. McAllister,* 177 Md. 97, 104, 8 A. 2nd 922; *Ellison v. Clayton,* 164 Md. 35, 38, 163 A. 695; *Hull's Estate,* 164 Md. 39, 48, 163 A. 819; *Junkins v. Sullivan,* 110 Md. 539, 542, 73 A. 264; 1 *Jarman on Wills,* p. 10.

In considering the paper in question, nothing whatever is found in it to show that it was the intention of Mrs. Walsh, when she executed it, that its operation was to be postponed until after her death, nor does any of the oral testimony offered show any intent upon the part of Mrs. Walsh so to limit the effect of the paper. It was not prepared at the suggestion, or request, of Mrs. Walsh, but it was a form in general use by the brokerage firm, sent to James Walsh, upon his request, after consultation with Mr. Morgan, a member of the brokerage firm. It was a form prepared expressly for, and used by, the brokers for their own

protection in the transfer of funds from Mrs. Walsh's account to the account of her son. The only feature of the paper, in any way, resembling a testamentary paper, is that it bears the signatures of two witnesses. But that feature alone is not sufficient to constitute the paper anything other than what it actually is, a request for immediate transfer of funds. By none of its terms was its operation postponed until after the death of Mrs. Walsh, and therefore revocable during her lifetime, as a will, or codicil.

After its execution, only three days before her death, Mrs. Walsh must have given it to some one to be delivered to the brokers, and it is very evident that it was put in the mail on the 29th, the day before Mrs. Walsh's death, otherwise it could not have reached the brokers in Baltimore from Bel Air, Maryland, on the first mail of the 30th. There is nothing in the record to show that whoever mailed the paper or any one else, had any reason to believe Mrs. Walsh's death would occur before the paper reached the office of the brokers. After considering the testimony in this record, in connection with the paper writing for which probate is sought, and guided by the principles of law which must govern the decision in cases like this, it is clear the conclusion must be that the order of the Orphans' Court of Harford County denying probate of the paper writing of July 27th, 1937, was correct, and the order appealed from must be affirmed.

*Order affirmed, appellant to pay the costs.*