CARNEY, Administrator, Etc. et al. *v.* KOSKO

[No. 322, September Term, 1961.]

*Decided June 14, 1962.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*John W. Sause, Jr.,* with whom were *J. Calvin Carney* and *J. Calvin Carney, Jr.,* on the brief, for the appellants.

No brief and no appearance for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The sole question involved herein is whether the paper writing executed by Mary Schlutter on December 30, 1954, was a valid codicil to her last will and testament.

On August 2, 1940, Miss Schlutter, a spinster, executed a will in which she left her entire estate in trust during the lives of her two brothers for their benefit; and upon the death of the survivor of them, the corpus was to be divided among nine charitable corporations. Both brothers having died, she executed a codicil on December 10, 1946, in which she revoked the trust provisions, provided a specific bequest of $75,000 to a cousin, and directed that the residue be distributed among the nine charitable corporations above mentioned. On April 14, 1952, a second codicil was made, the effect of which was to revoke the first codicil and reinstate the provisions of the will of August 2, 1940. All of these instruments were formally and expertly drawn, obviously the products of professional hands.

Thereafter, on March 16, 1954, certain litigation between Miss Schlutter and her cousin resulted in a decree of the Circuit Court of Baltimore City in which (a) the cousin's petition for the appointment of a committee for her was denied; (b) her assets were vested in Elmer H. Miller, trustee, during her lifetime; and (c) upon her death *part* of the assets of the trust were "to be turned over, conveyed, deeded and delivered to the executor of the last will and testament of Mary Schlutter" and the other part was to be given to the cousin. By decree dated April 12, 1954, Eldridge Young and Edward S. Panetti were substituted as trustees. Thereafter Mr. Young died and Mr. Panetti became sole trustee. This was the status of her estate at the time of her death on March 4, 1960.

For some eight years prior thereto, she had been living in a large home, owned by her, with the appellee and appellee's husband. Miss Schlutter was more or less an invalid. The appellee was her nurse, companion and housekeeper; the hus-

band acted as a handyman. For their services, they were paid $55 a week by the trustee, Mr. Panetti.

On December 30, 1954, Miss Schlutter wrote, in longhand, the following document (Exhibit 1):

"December 30, 1954.

Mr. Pannete
Please ~~1000~~ give 1000 dollars to
to my friend and nurse ~~Jenie~~ Jennie
      Kosko
      Mary Schlutter
      2220 Erdman Ave
      2220
Witness: Marie Gebhardt Noll
      Bertha Struven Doeller"

On the same day she also wrote in longhand (Exhibit 2):

"December 30, 1954.

Mr Pannete
Please give 1000 dollars
Please give one thousand to my friend
and nurse Jennie Kosko after my death
      Miss Schlutter
      2220 Erdman Avenue"

The paper writings were delivered to Jennie Kosko. She testified she showed them to Mr. Panetti shortly thereafter. He gave her no money because she was not supposed to get any until after Miss Schlutter's death, but he told her to "hold on to [them]." Shortly after Miss Schlutter's demise, she showed one of the writings to Mr. Miller, who was the executor. This was verified by Mr. Miller. He took a copy of it. She knew Mr. Miller was a lawyer, and "thought he would do something about it." This caused a delay in filing the paper, but, when Mr. Miller failed to do anything, she turned it over to her present lawyer and he "took care of it from then on until today." The paper writings were not actually filed until slightly over a year after Miss Schlutter's death; however, the settlement of her estate had not then been completed.

The paper writings were propounded to the Orphans' Court as a joint codicil to Miss Schlutter's will and the two previous codicils, which had been admitted to probate. The executor denied that the papers were valid testamentary dispositions of property, and a hearing on the issue thus raised was held by the Orphans' Court.

Jennie Kosko testified to her long and close association with Miss Schlutter, and the work that she and her husband had done for her. The paper writings were written by Miss Schlutter. It was her understanding that she was to get $1000, not $2000, upon Miss Schlutter's death. Miss Schlutter wrote Exhibit 1 first, and when it was realized that she had not provided therein that the $1000 was only to be paid upon her death, Exhibit 2 was written and it contained the provisions "after my death." She paid no consideration for the papers; they were "supposed to be a gift."

Mrs. Noll testified the writings were made by Miss Schlutter, and that she, Mrs. Noll had signed Exhibit 1 in the capacity of a witness. She understood the papers were to give Mrs. Kosko $1000, and she knew Miss Schlutter, whom she visited often, wanted Mrs. Kosko to have the money, because Miss Schlutter valued highly Mrs. Kosko and her services.

Mrs. Doeller stated that the writings were in the handwriting of Miss Schlutter, and she, too, had signed as a witness. She knew Miss Schlutter very intimately over a long period of time. In response to a question as to what Miss Schlutter intended to do by the paper writings, she replied: "[She] intended to leave money to Mrs. Kosko." And when asked, "How much money?" she stated $1000. She also testified that she, Miss Schlutter and Mrs. Noll signed Exhibit 1 in the presence of each other.

Mr. Miller verified that Mrs. Kosko had exhibited one of the writings to him after Mrs. Schlutter's death, and he had made a copy of it.

The Orphans' Court held that Exhibit No. 2 could not be accepted as a codicil, due to the fact that it was unattested, but that it together with the other evidence adduced "clearly [shows] that the decedent wrote Exhibit No. 1 *animo*

*testandi."* Consequently, the court ordered Exhibit 1 admitted to probate as a valid codicil to the last will and testament of Miss Schlutter.

There is little dispute between the parties as to the principles of law which control our determination of the case. Appellant concedes that a will or a codicil need not be in any particular form, so long as it (a) makes a disposition of the testator's property, and (b) such disposition is to take effect only upon death. *Kelleher v. Kernan,* 60 Md. 440; *Dietrich v. Morgan,* 179 Md. 553, 20 A. 2d 175; *Rabe v. McAllister,* 177 Md. 97, 8 A. 2d 922; *Hull's Estate,* 164 Md. 39, 163 A. 819; Miller, *Construction of Wills,* § 1. He also concedes that parol evidence may be received to establish that a paper, which does not on its face appear to be a testamentary document, was executed *animo testandi;* [1] and that there is no statutory limitation on the time for presenting a testamentary paper for probate.[2] But appellant argues that there is a presumption against informal documents, and this presumption is re-enforced by the fact that the paper was addressed to a trustee who only had control over testatrix' property during her lifetime; that the testatrix was presumed to know the nature and character of her property, yet she addressed the paper to Mr. Panetti, the trustee, instead of to her executor; and that there was "suspicion from failure to file [the] paper" sooner.

We are unable to say the Orphans' Court was in error. Exhibit 1 definitely indicates a desire on the part of the testatrix to dispose of a portion of her property. Exhibit No. 2 and the parol evidence given by the witnesses were sufficient to support the findings that that disposition was only to take effect upon Miss Schlutter's demise, and that Exhibit 1 was executed *animo testandi.* It is true the paper was addressed to a trustee instead of the executor, but, when it is borne in mind that Mr. Panetti, at that time, was vested with all of Miss Schlutter's property, was paying all of her expenses and she was a lone, aged woman, we do not think that too much significance can be given to this fact. It is also true that it

---

1. Wareham v. Sellers, 9 G. & J. 98; Kelleher v. Kernan, supra; Dietrich v. Morgan, supra.

2. Matthews v. Fuller, 209 Md. 42, 120 A. 2d 356.

is the policy of the Testamentary Act to promote the prompt probate of wills. *Watkins v. Barnes,* 203 Md. 518, 102 A. 2d 295. However, as we pointed out above, there is no statutory limitation in Maryland stating when a will must be presented for probate, and Mrs. Kosko's explanation that she showed the paper to the executor and thought he was going to do something about it must be given some consideration.

Finding no error, the order will be affirmed.

*Order affirmed, with costs.*