REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0950

September Term, 2015

---

ALBERT GREEN

v.

DONALD NELSON, *et al.*

---

Krauser, C.J.,
Berger,
Zarnoch, Robert A.,
  (Retired, Specially Assigned),

JJ.

---

Opinion by Zarnoch, J.

---

Filed:  April 28, 2016

In this statute of limitations case, appellant Albert Green attempts to contest a will that was originally admitted to probate six years ago by the Orphans' Court for Allegany County. In 2003, the late Kenneth Green executed a will in which he made his friend, Betty McClintock, the prime beneficiary. In 2009, he executed a second will—later determined to have been procured by fraud and undue influence—in which he revoked the earlier will and gave all of his assets to his brother, Green. Apparently unaware of the second will, Linda Malamis and Donald Nelson ("appellees" or the "Estate"), filed a petition to open Kenneth's estate and to probate the earlier will. The orphans' court issued an administrative probate order appointing Nelson and Malamis as personal representatives, and admitted the earlier will to probate.

Almost two months later, Green petitioned the orphans' court for judicial probate, asserting that the second will was Kenneth's last will and testament. That will was also admitted to probate and a personal representative was appointed. McClintock challenged the second will, contending that it had been procured by fraud and undue influence. After a five-day hearing in the Circuit Court for Allegany County, the second will was found to have been fraudulently procured, a determination affirmed by this Court. *See Green v. McClintock*, 218 Md. App. 336, *cert. denied,* 440 Md. 462 (2014).

While the circuit court's finding of fraud was on appeal in this Court, Green filed a petition to caveat the 2003 will on September 3, 2013—almost three and a half years after the appointment of Malamis and Nelson under the earlier will. The orphans' court denied the petition as untimely. Green appealed, and the Circuit Court for Allegany County

upheld the decision of the orphans' court. Green filed an appeal to this Court on July 13, 2015, and presents the following question for our review:

> "Whether the Circuit Court incorrectly determined, as a matter of law, that the Petition to Caveat was untimely filed."

Because the plain language of § 5-207 of the Estates and Trusts Article ("E.T.") of the Maryland Code (1974, 2011 Repl. Vol.) requires that a caveat be filed within six months of the appointment of personal representatives under the will, we hold that Green's petition to caveat the earlier will was not timely filed, and affirm the judgment of the circuit court.

## BACKGROUND

In 2003, the decedent, Kenneth Green, executed a will (the "2003 Will") in which he made his friend, Betty McClintock, the prime beneficiary. Their friendship continued, and in 2006, when Kenneth was diagnosed with cancer, McClintock took him to his chemotherapy treatments. After a relapse in 2009, Kenneth was in a great deal of pain and was prescribed opiate medication. While ill, his brother, Albert Green, took him from Maryland to Kentucky and held him there incommunicado. In Kentucky, Kenneth executed a second will (the "2009 Will") revoking the earlier will and giving all of his assets to his brother, even though he had an acrimonious relationship with the Green family and had previously instructed Malamis and Nelson, that he wanted McClintock to inherit all of his assets and that he wanted to leave nothing to his brother and his family. On September 3, 2009, Albert Green filed the 2009 Will with the Register of Wills for

2

Allegany County for safekeeping. Kenneth died at his brother's home in Kentucky on January 19, 2010.

On April 5, 2010, Malamis and Nelson filed a petition to open Kenneth's estate, seeking to probate the 2003 Will, and, that day, the orphans' court issued an administrative probate order appointing Nelson and Malamis as personal representatives, and admitted the 2003 Will to probate. Green was listed as an heir and received notice of the probate proceeding via mail, which advised that "All persons having any objection to the appointment (or to the probate of the decedent's will) shall file their objections with the Register of Wills on or before the 5th day of October, 2010." Rather than filing a petition to caveat the 2003 Will, on May 21, 2010, Green petitioned the orphans' court for judicial probate asserting that the 2009 Will was Kenneth's last will and testament.[1] The orphans' court apparently agreed with Green, admitted the 2009 Will to probate, and appointed Andrew Green, Albert Green's son, as personal representative.[2]

On September 9, 2010, McClintock filed a petition to caveat the 2009 Will, alleging that the will was procured as a result of fraud, undue influence, or duress imposed by Green or Green's family members, and asserted that the 2003 Will was, in

---

[1] Upon the request for judicial probate, the appointment of Malamis and Nelson as personal representatives was terminated. E.T. § 6-307. After a request has been filed, the status and authority of a previously appointed personal representative is scaled back to the more limited one of a special administrator. A special administrator has some but not all of the duties and powers entrusted to a personal representative. *See* E.T. § 6-403; *Banashak v. Wittstadt*, 167 Md. App. 627, 652 (2006).

[2] The orphans' court determination was of a limited nature. The minutes of the June 18, 2010 hearing reflect that the court proceeded on the representations of counsel, and did not attempt to resolve the validity of one will over the other.

fact, Kenneth's last will and testament. McClintock, a friend, was not an heir at law, and was only able to file her caveat as a legatee under the 2003 Will. Accordingly, the petition requested that the court "pass an Order admitting to probate the Will of March 5, 2003, as being the valid Last Will and Testament" of the decedent. Andrew, acting for the Estate, petitioned to transfer the caveat proceeding to the circuit court in accordance with Maryland Rule 6-434, which allows the orphans' court to transmit contested issues of fact for trial in the circuit court. However, the only issues presented to the circuit court were those related to the validity of the 2009 Will. The Greens did not contest the validity of the 2003 Will.

After a five-day hearing, the Circuit Court for Allegany County found the 2009 Will to have been procured by fraud and undue influence, as a result of Kenneth's poor health, prescription drug use, and Albert's behavior, which included, among other things, misuse of Kenneth's funds and sequestering Kenneth from his friends in Maryland.[3] We affirmed the circuit court's findings in a reported opinion, *Green v. McClintock*, 218 Md. App. 336, *cert. denied,* 440 Md. 462 (2014). The 2003 Will then became the decedent's last will and testament, pursuant to an order issued by the orphans' court on July 16, 2013. The orphans' court also appointed Malamis and Nelson as special administrators of the estate.[4]

---

[3] Judge Arthur set out the dubious circumstances surrounding the execution of the 2009 Will in detail in our prior reported opinion. *See McClintock*, 218 Md. App. at 341-57.

[4] Malamis and Nelson were subsequently reappointed as personal representatives.

Almost three and a half years after the initial appointment of Malamis and Nelson under the 2003 Will and three years after the deadline to caveat, Albert Green filed a petition to caveat the 2003 Will, asserting that the will "was not executed by the decedent or the execution of the 2003 Will was procured by fraud, duress and/or undue influence." He requested that the court declare the estate intestate, presumably because he would be entitled to the proceeds of the estate as Kenneth's only living heir.

The orphans' court denied the petition on September 17, 2013. Unaware of the orphans' court decision, on September 19, 2013, Nelson opposed the caveat as untimely filed under E.T. § 5-207—the same ground relied upon by the orphans' court. The Circuit Court for Allegany County upheld the decision of the orphans' court on April 30, 2015. Within 10 days of the entry of the circuit court decision, Green filed a motion to alter and amend judgment. The court denied the motion on June 11, 2015, and Green filed this timely appeal on July 13, 2015.[5]

## DISCUSSION

Green argues that, when viewed properly, his caveat was timely filed under E.T. §

---

[5] Ordinarily, a party must file his or her notice of appeal "within 30 days after entry of the judgment or order from which the appeal is taken." Md. Rule 8-202(a). In this case, the circuit court entered judgment on June 11, 2015, and Green filed his notice of appeal on 32 days later, on July 13, 2015. Green's appeal is timely, however, because the last day of the period to file was Saturday, July 11, 2015. *See* Md. Code (2014), General Provisions Art. ("G.P.") § 1-302(b). Accordingly, Green had until the next business day to file his notice of appeal. *Id.*; *see Mayor & Town Council of Oakland v. Mayor & Town Council of Mountain Lake Park*, 392 Md. 301, 315-16 (2006) (citing *Fischer v. Fischer*, 193 Md. 501, 505-06 (1949) (concluding that Maryland rule governing time for when an appeal may be noted "must be construed in light of" the predecessor to G.P. § 1-302(b) because its intent is "to make uniform the method of computation of time")).

5-207(a). Alternatively, he argues that public policy considerations dictate that we allow the late-filing of his petition to caveat. The Estate argues that because Nelson and Malamis were first appointed as personal representatives under the 2003 Will in 2010, the plain language of the statute dictates that the time for filing a caveat to that will expired six months after their initial appointment. The Estate also contends that no public policy excuses late-filing in the instant case, and that *res judicata* bars Green's caveat, because he could have caveated the 2003 Will during the prior proceeding.[6]

We review a court's interpretation of statutory provisions *de novo*. *Maryland-Nat'l Capital Park & Planning Comm'n v. Anderson*, 395 Md. 172, 181 (2006). To reach an appropriate construction, we examine the plain language of the statutory text, the statutory purpose, and the consequences of different statutory interpretations. *Town of Oxford v. Koste*, 204 Md. App. 578, 585 (2012), *aff'd,* 431 Md. 14 (2013). "Text is the plain language of the relevant provision, typically given its ordinary meaning, viewed in context, considered in light of the whole statute, and generally evaluated for ambiguity." *Id.* (Citations omitted). The purpose of the statute, gleaned either from the text or from external sources, informs our reading of the statute. *Kaczorowski v. Mayor & City Council of Baltimore*, 309 Md. 505, 512-15 (1987). Finally, "[a]n examination of interpretive consequences, either as a comparison of the results of each proffered construction, or as a principle of avoidance of an absurd or unreasonable reading,

---

[6] Although appellees argued *res judicata* in both the orphans' court and the circuit court, neither forum relied on the theory as a basis for dismissing the caveat. Similarly, because we affirm the circuit court based on the plain language and purpose of the statute, we do not address the *res judicata* argument here.

grounds the court's interpretation in reality." *Koste*, 204 Md. App. at 586 (Citations omitted).

The purpose of probate and Maryland testamentary law is "to simplify the administration of estates, to reduce the expenses of administration, to clarify the law governing estates of decedents, and to eliminate any provisions of prior law which are archaic, often meaningless under modern procedure and no longer useful." E.T. § 1-105. The law promotes the prompt probate of wills and the speedy administration and settlement of estates. *Carney v. Kosko*, 229 Md. 112, 118 (1962) (citing *Watkins v. Barnes*, 203 Md. 518, 523 (1954)). E.T. § 1-105 further provides that "[t]his article shall be liberally construed and applied to promote its underlying purpose." *Id.*

Because of the arcane nature of trusts and estate law, we begin with a brief overview of the probate process. A probate proceeding provides a vehicle for identifying and collecting the decedent's property, paying the debts of the decedent and the estate in an orderly way, and distributing the remainder of the estate to those entitled to share in the estate either under the decedent's will or according to intestate distribution. *In re Estate of Trigg*, 368 S.W.3d 483, 496 (Tenn. 2012) (Citation omitted). To "probate a will" means "to prove before the proper judicial officer all the documents comprising the last will and testament of the decedent." *Schlossberg v. Schlossberg*, 275 Md. 600, 625 (1975).

An interested person[7] may initiate administrative probate by filing a petition with

---

[7] E.T. § 1-101(i) defines an interested person as:

(Continued . . . )

the register of wills, E.T. § 5-301, or may opt for judicial probate by filing a petition with orphans' court.[8] After the appointment of a personal representative and the issuance of letters of administration, E.T. § 6-103, the personal representative may begin to settle the accounts of the estate. However, if an interested person suspects that a will was not, in fact, executed, or was procured by fraud, duress, or undue influence, he or she may contest the validity of the will by filing a petition to caveat. E.T. § 5-207.

The case before us presents the issue of the proper time to file a caveat of a will. E.T. § 5-207(a) provides:

> Regardless of whether a petition for probate has been filed, a verified petition to caveat a will may be filed at any time prior to the expiration of six months following the first appointment of a personal representative under a will, even if there be a subsequent judicial probate or appointment of a personal representative. If a different will is offered subsequently for probate, a petition to caveat the later offered will may be filed at a time within the later to occur of:
>     (1) Three months after the later probate; or

---

(. . . continued)

(1) A person named as executor in a will;
(2) A person serving as personal representative after judicial or administrative probate;
(3) A legatee in being, not fully paid, whether his interest is vested or contingent;
(4) An heir even if the decedent dies testate, except that an heir of a testate decedent ceases to be an "interested person" when the register has given notice pursuant to § 2-210 or § 5-403(a) of this article. . . .

[8] The Attorney General has observed that "the distinction between administrative and judicial probate exists only with respect to the procedure for appointment and qualification of the personal representative. Once the appointment process has been completed, there is no difference thereafter in probate procedure." 57 *Opinions of the Attorney General* 566 (1972).

(2) Six months after the first appointment of a personal representative of a probated will.

Under § 5-207, whether or not a will has been probated, a would-be caveator must file a petition to caveat a will within six months after the initial appointment of a personal representative under a will. The statute makes clear that in a normal proceeding, i.e., one without mistake or irregularity, this requirement is immutable—even if there is a subsequent judicial probate or appointment of different personal representatives, a caveator has just six months to file a petition. *See Sherman v. Robinson*, 319 Md. 445, 449 (1990) (citing *Schlossberg v. Schlossberg*, 275 Md. 600, 619-25 (1975)) ("Absent fraud, material mistake, or substantial irregularity in the appointment of the personal representative or the probate proceedings, the six-month time limit will be neither tolled nor extended"). Timely filed caveats further the purpose of testamentary law because the prompt resolution of will validity allows the personal representative to expeditiously settle the estate.

Green attempts to side-step the plain language of the statute by arguing that 1) the register made a mistake of fact in the administrative probate of the 2003 Will; 2) the judicial probate of the 2009 Will operated to void the appointment of personal representatives under the 2003 Will and, 3) the 2003 Will was actually a "later offered will" because it was not "effectively" probated until after the will that he offered, the 2009 Will, was determined to be fraudulent procured. We address each contention in turn.

According to Green, because he filed the 2009 Will for the register's safekeeping,

9

the existence of the 2009 Will should have automatically triggered a judicial probate when the 2003 Will was offered.  E.T. § 5-402(c) provides that the register shall initiate a judicial probate proceeding "[i]f it appears to the court or the register that the petition for administrative probate is materially incomplete or incorrect in any respect[.]"  It was the duty of the proponents of the 2009 Will to bring that will to the attention of the register.[9]  Putting a will on file with the register does not give the register constructive notice in all administrative probate proceedings, and does not render another will submitted for probate materially incomplete or incorrect.  Here, there is no indication that the petition for administrative probate of the 2003 Will was materially incomplete or incorrect in any respect.  We, thus, reject Green's argument.

Green also argues that the Court of Appeals in *Schlossberg v. Schlossberg*, 275 Md. 600 (1975), held that when letters of administration should not to have been granted in the first place, an appointment as personal representative is void *ab initio*, the proceedings should be disregarded entirely by the orphans' court and new administration should be granted as if the prior one had never taken place.  However, in *Schlossberg*, the appellant's concealment of a codicil was a "fraud" that "caused the Register to 'render an erroneous judgment' when the appellant made oath that there was no other 'will.'"  *Schlossberg*, 275 Md. at 626.  The Court determined that since the appointment of the personal representative had been "obtained by fraudulent means, not only must the means be condemned, but the result produced by them must be annulled." *Id.* (Citations

---

[9] Green filed a petition for judicial probate on May 21, 2010, over a month after Nelson and Malamis were appointed as personal representatives.

omitted).

In contrast, the present circumstances are more similar to those found in *Hayman v. Messick*, 252 Md. 384, 391-92 (1969), where the mistaken appointment of a personal representative not induced by fraud or deceit did not invalidate the prior actions taken by the personal representative. Here, Malamis and Nelson did not perpetrate a fraud upon the register. Instead, with representatives and the register apparently unaware of the 2009 Will, the register appointed Malamis and Nelson as personal representatives under the 2003 Will. Thus, because the personal representatives did not receive their appointments through fraud, the actions taken by the register were not nullified or void *ab initio*. *Cf. Messick*, 252 Md. at 391-92. For these reasons, we reject Green's contention that the act of revoking or modifying an action taken by the register during administrative probate, such as the appointment of a personal representative in this case, resets the time for a person to file a caveat of a will.

Second, Green argues that the order of the orphans' court, dated June 25, 2010, operated to void the appointment of personal representatives under the 2003 Will. Green maintains that, because the appointment of the personal representatives was revoked by the orphans' court, the six-month period to caveat the 2003 Will was also rendered void.[10] We find no support for this proposition in the statute or in case law.

---

[10] We note that the order did not specifically revoke the prior letters of administration granted to Malamis and Nelson. However, E.T. § 6-307(a)(1) provides that the "appointment of a personal representative who has been appointed by administrative probate is terminated by a timely request for judicial probate." Notably,

(Continued . . . )

Section 5-207 specifically contemplates the existence of a later judicial probate and of a change in the personal representatives. Even if those circumstances occur, they do not extend the time for filing a caveat to a will beyond six months after a personal representative is appointed under that will. The provision cannot be more clear: "[E]ven if there [is] a subsequent judicial probate or appointment of a personal representative[,]" a petition to caveat a will must "be filed at any time prior to the expiration of six months following the first appointment of a personal representative under a will[.]" § 5-207(a).

Construing the above language in conjunction with the powers of the orphans' court in a judicial probate proceeding, § 5-404(a) provides that the orphans' court "shall appoint one or more personal representatives and shall, if appropriate, revoke, modify, or confirm action taken at the administrative . . . probate." In acknowledging in § 5-207 the possibility of a later judicial probate, the legislature was aware that the orphans' court may modify or revoke an appointment made in administrative probate, and choose not to extend the time for filing a caveat. We reject Green's interpretation of § 5-207 because it would render meaningless the phrase, "even if there [is] a subsequent judicial probate or appointment of a personal representative."

Third, Green argues that the 2003 Will was, in the context of § 5-207(a)(1), a "later offered will" because it was not "effectively" probated until after the will that he

---

(. . . continued)
however, "[t]he validity of an act performed by the person as personal representative is not affected by this termination." E.T. § 6-307(a)(2).

offered, the 2009 Will, was determined to be fraudulent procured.[11]  However, the plain language of the statute makes clear that the will under which a personal representative is appointed is the initial will.  Further, § 5-207 and its accompanying Maryland Rule specifically contemplate the scenario encountered here, where personal representatives are appointed under one will and a different will is subsequently offered for probate.

Under § 5-207, a later offered will is a will that is offered for probate subsequent to the first appointment of a personal representative under different will.  In the event that a later will is offered, a person may caveat the *later offered will* either three months after that will is probated, or within six months after the first appointment of a personal representative of a probated will, whichever is later.  In other words—after the expiration of the six months following the initial appointment of personal representatives under the first will—the only extension of time available is directed at the will offered *after* the first will.  Maryland Rule 6-431 makes this abundantly clear:

> If **another will** or codicil is subsequently offered for probate, a petition to caveat **that will** or codicil shall be filed within three months after **that will** or codicil is admitted to probate or within six months **after the first appointment of a personal representative under the first probated will**, whichever is later.

Rule 6-431(b) (Emphasis added).  Thus, under both § 5-207 and Rule 6-431, the 2003 Will was not a "later offered will," and Green was required to file his caveat within six months after the appointment of Malamis and Nelson.

---

[11] We note that an "ineffective" probate is not a concept recognized by Maryland law.  E.T. § 5-301 et seq. provides for administrative probate of a will.  Under certain circumstances, the proceedings may be transferred to judicial probate, *see* E.T. § 5-402, however, that transfer does not render the administrative probate "ineffective."

13

Finally, Green argues that the "purpose of the Estates and Trusts Article, public policy and sound logic demand an exception to the statutory deadline be made in this case." We hold that, on the contrary, the purpose of the Estates and Trusts Article is well served by the construction of § 5-207 articulated above.

One of the purposes of Maryland testamentary law is to promote the prompt probate of wills and the speedy administration and settlement of estates. *Carney v. Kosko*, 229 Md. at 118 (citing *Watkins*, 203 Md. at 523). "[T]he whole purpose of our testamentary laws is to 'guard against all needless delay, and to secure as prompt and speedy settlements of the estates of deceased persons as practicable.'" *Silverwood v. Farnan*, 180 Md. 15, 21 (1941).

Indeed,

> [g]reat injustice was possible to be done to devisees and legatees, as well as to testators themselves, by permitting caveats to be filed at any time, however long, after the probate of wills. Designing parties could wait until the death of those familiar with the circumstances under which a will was executed, before proceeding against it, and other dangers suggest themselves under the former practice in this state. The legislature has therefore wisely undertaken to limit the time within which wills can be attacked.

*Garrison v. Hill*, 81 Md. 551, 555-56 (1895). Other jurisdictions have recognized that all testamentary documents should, if possible, be adjudicated in the same proceeding, and that separate trials on subsequent or prior wills should be discouraged because they only serve to increase the time and expense of the caveat. *See, e.g., In re Estate of Black*, 153 Wash. 2d 152, 172-73 (2004) (en banc); *Estate of Hamilton v. Morris*, 67 S.W.3d 786, 798 (Tenn. Ct. App. 2001); *Matter of Dunn*, 129 N.C. App. 321, 326 (1998); *In re Irvin's*

14

*Estate*, 19 Misc. 2d 41, 43-44 (N.Y. Sur. 1958).

This case embodies the very concern that the legislature addressed by "limit[ing] the time within which wills can be attacked." *Garrison*, 81 Md. at 556. Six years have now passed since the initial appointment of the personal representatives under the 2003 Will. Had Green caveated that will while McClintock was contesting the 2009 Will, this controversy would have been promptly resolved. Instead, Green waited until it was clear that he would not benefit under the 2009 Will before filing this contest—thus, causing needless delay in the settlement of the decedent's estate.

Green acknowledges that § 5-207(a) is a mandatory time bar to file a petition to caveat on the grounds, and, for that reason, the section divests the orphans' court of its jurisdiction after the passage of six months since the appointment of the personal representative. *See Durham v. Walters*, 59 Md. App. 1, 9 (1984). As stated above, in the absence of fraud, material mistake or substantial irregularity, the time constraints for the filing of caveats are neither tolled nor extended. *Id.* at 12.

Green argues, however, that because in two prior instances, *Sole v. Darby*, 52 Md. App. 218 (1982), and *Markert v. Beatley*, 84 Md. App. 594 (1990), this Court eased the requirements for filing a petition to caveat, we should do the same in this case. However, each case is distinguishable, and neither provide sufficient justification for us to depart from the plain language of § 5-207 in this case.

In *Darby*, personal representatives sent notice of the probate to the decedent's daughter who lived in North Carolina, and told her that she had six months to file a petition to caveat the will. 52 Md. App. at 220. However, the date listed on the notice

15

was actually three days after the six-month period expired. *Id.* The *Darby* Court held that under those circumstances, where the personal representatives gave the caveator an incorrect notice document upon which she relied to her detriment, rigid adherence to the terms of § 5-207 was not mandated. *Id.* at 226. Indeed, the circumstances in *Sole* are properly characterized as an irregularity in the proceeding, which the Court of Appeals has determined may be grounds for the late-filing of a petition to caveat. *See Gessler v. Stevens*, 205 Md. 498, 505 (1954) (After a notice of intention to file a caveat was misplaced by the register of wills, the Court determined that a "mistake was made through no fault of the next of kin or their attorney, and should not be allowed to deprive the next of kin of their right of action and their day in court").

*Markert* involved the attempted caveat of a will by the decedent's only lawful heir, who was living in Germany. 84 Md. App. at 601. The proponent of the will was aware that the would-be heir did not receive probate notice in time to permit a response, and the proponent was also aware of the heir's filing of an unverified a caveat before the deadline. *Id.* Furthermore, there was no evidence that the proponent undertook any action to determine that actual notice had been received by the heir, as required by E.T. § 1-103(c), and no effort was made to contact her to determine whether she had received such notice and warn her of the pendency of the action.[12] *Id.* Under those circumstances,

---

[12] E.T. § 1-103(c) provides:

> If no return receipt is received apparently signed by the addressee, and there is no proof of actual notice, no action taken in a proceeding may prejudice the rights of the person entitled to notice unless proof is made by verified

(Continued . . . )

we concluded that "[i]t would be a harsh and unjust result to preclude the deceased's only lawful heir from contesting the validity of her mother's will in light of the allegations set forth in the pleadings." *Id.* at 602.

In contrast with the circumstances in *Darby* and *Markert*, Green had ample notice of the filing requirements for caveats of the 2003 Will and of McClintock's intention to proceed as the beneficiary under that will. In Nelson's initial administrative probate filing, Green was listed as an interested person and received notice of the probate proceeding. The Estate published notice in a newspaper, and sent notice via mail to Green, which advised that "All persons having any objection to the appointment (or to the probate of the decedent's will) shall file their objections with the Register of Wills on or before the 5th day of October, 2010." Furthermore, McClintock's petition to caveat requested that the court "pass an Order admitting to probate the Will of March 5, 2003, as being the valid Last Will and Testament" of the decedent. Clearly, the notice considerations present in *Darby* and *Markert* are not found in this case, and no mistakes occurred warranting the extension of the time limit set in § 5-207.

Green maintains that requiring a party to caveat a will within six months of the appointment of a personal representative under that will would lead to an illogical result that would subject parties to onerous legal proceedings because they would be required to "file caveats against every other will filed with the Register of Wills and the Orphan's

---

(. . . continued)
> writing to the satisfaction of the court or register that reasonable efforts to locate the addressee and warn him of the pendency of the action have been made.

Court in anticipation of a later caveat that may never proceed." Green presents a counterfactual example: "if a decedent left ten wills, each revoking the prior and the tenth will in the succession is caveated, an interested person to the tenth will [would] be required to file nine caveats within six months of the appointment of the first personal representative." However, Green's scenario reflects neither the text of the statute, nor the practice of estates and trusts attorneys.

The six-month statute of limitations enounced in § 5-207 starts to run after "the first appointment of a personal representative under a will[.]" Thus, an interested person need only file a petition to caveat a will if a personal representative has been appointed under that will, as had happened in this case. If a decedent did indeed have ten wills, it is unlikely that even a fraction of those wills would be offered for probate. However, even in someone sought to offer each will, after the initial appointment of a personal representative under any one of the wills, every other will subsequently probated would be considered a later offered will, and would trigger § 5-207(a)(1), which provides an additional three months after the probate of each later will to file a petition to caveat.

In sum, Green was on notice that the 2003 Will was the basis for McClintock's authority to caveat the 2009 Will. He had received notice—sent by the Estate on May 12, 2010—of the appointment of the personal representatives under the 2003 Will and of the deadline for filing a caveat to that will. Because personal representatives were appointed under the 2003 Will, the 2009 Will can only be considered a later offered will under the plain language of § 5-207. If Green thought that the 2003 Will was not executed by the decedent or that it had been procured by fraud, duress and/or undue influence, as he

18

alleged in his 2013 petition, he should have filed a caveat within six months of the appointment of personal representatives under the 2003 Will. Allowing an interested person to caveat a will three years after the statute of limitations has run and while the parties had been involved in protracted litigation does not serve the purposes of Maryland testamentary law.

**JUDGMENT OF THE CIRCUIT COURT FOR ALLEGANY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**